**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |  |
|---|---|---|
| **NEODRON LTD.,** | ) | |
| | ) | |
| | ) | Case No. 6:19-CV-398-ADA |
| *Plaintiff,* | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| **LENOVO GROUP LTD., LENOVO** | ) | |
| **(UNITED STATES) INC., and** | ) | |
| **MOTOROLA MOBILITY LLC,** | ) | |
| | | |
| *Defendants.* | | |

**MOTION TO DISMISS FOR LACK OF VENUE, OR IN THE ALTERNATIVE, TO
TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

I.  INTRODUCTION: VENUE IS IMPROPER IN THE WESTERN DISTRICT OF TEXAS ................................................................................................................ 1

II. FACTUAL BACKGROUND: NEITHER LENOVO, MOTOROLA, NOR NEODRON RESIDE IN OR HAVE A REGULAR, ESTABLISHED PLACE OF BUSINESS IN THE WDTX ....................................................................................... 2

    A.    Lenovo Is a Delaware Corporation, with no Offices in Texas, and with no Regular, Established Place of Business in the WDTX ................................. 2

    B.    Motorola Is a Delaware Corporation with no Regular, Established Place of Business in the WDTX .................................................................... 4

    C.    Other than Litigation Activity, Neodron Does Not Have any Presence in or Connection to Texas ........................................................................... 5

III. STATEMENT OF LAW:  IMPROPER VENUE REQUIRES DISMISSAL OR TRANSFER TO A PROPER AND CONVENIENT FORUM ............................... 6

    A.    Venue Is Only Proper Where (1) the Defendant Resides or (2) Has a Regular, Established Place of Business and Has Committed Acts of Infringement ................................................................................................ 6

    B.    Venue Over a Defendant Cannot Be Established by Imputing the Location of Third Parties Without Collapsing the Corporate Form ........................ 6

    C.    Venue Must Be Proper for Every Defendant ............................................ 8

    D.    Dismissal, Or Alternatively, Transfer Are Proper Remedies for Lack of Venue ........................................................................................................ 8

IV. VENUE IS IMPROPER IN THE WESTERN DISTRICT OF TEXAS UNDER RULE 12(b)(3) ................................................................................................... 9

    A.    Lenovo and Motorola Are Not Incorporated in this District ................... 9

    B.    Lenovo and Motorola Do Not Have "Regular and Established" Places of Business in the WDTX and Have Not Committed Acts of Infringement Here ........................................................................................................... 9

    C.    Defendants' Employees or Job Advertisements Do Not Form the Basis of Venue in the WDTX ............................................................................... 10

    D.    Whether Motorola Is a Subsidiary of Lenovo Group Ltd. Is Irrelevant ............... 11

V. ALTERNATIVELY, IF DISMISSAL IS NOT GRANTED, DEFENDANTS CONSENT TO TRANSFER TO THE NDCA ................................................... 11

A.    The NDCA Is an Appropriate Forum ................................................... 11

B.    The NDCA Is the Most Convenient Forum .......................................... 12

    1.    The Private Interest Factors Favor the NDCA ........................... 12

    2.    The Public Interest Factors Favor the NDCA ............................ 14

VI.    A STAY OF THIS CASE IS ALSO APPROPRIATE ...................................... 15

A.    The Issues in this Case Significantly Overlap with the Parallel ITC Action
      and the Currently Stayed WDTX Cases ................................................ 16

B.    The Court May Stay This Action Pursuant to its Inherent Authority ................. 18

    1.    No Prejudice Would Result to Neodron if this Case Is Stayed ................. 18

    2.    Lenovo and Motorola Would Suffer Significant Hardship if this
          Case Is Not Stayed ..................................................................... 19

    3.    Staying this Case Would Save Judicial Resources ..................... 19

VII.    CONCLUSION ................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AGIS Software Dev., LLC v. ZTE Corp.*,
  2018 WL 4854023 (E.D. Tex. Sept. 28, 2018) ...............................................1, 8, 11

*Alloc, Inc. v. Unilin Decor N.V.*,
  No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) ......................18, 19

*Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*,
  512 F. Supp. 2d 1039 ........................................................................................12, 14

*Arris Enters. LLC v. Sony Corp.*,
  No. 17-cv-02669-BLF, 2017 WL 3283937 (N.D. Cal. Aug. 1, 2017) ..............19, 20

*Auto-Dril, Inc. v. National Oilwell Varco, L.P.*,
  C.A. No. 6:15-cv-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) .................8

*Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*,
  No. 5:14-cv-2022, 2018 WL 400326 (N.D. Ohio Jan. 12, 2018) .............................7

*Avago Techs. U.S., Inc. v. Iptronics, Inc.*,
  No. 5:10-CV-02863-EJD, 2013 WL 623042 (N.D. Cal. Feb. 15, 2013)......15, 18, 19

*B & D Produce Sales, LLC v. Packman1, Inc.*,
  No. SA-16-CV-99-XR, 2016 WL 4435275 (W.D. Tex. Aug. 19, 2016) .........18, 20

*Bd. of Regents, The Univ. of Tx. Sys. v. Boston Sci. Corp.*,
  No. A-17-CV-1103-LY (W.D. Tex. Mar. 17, 2018) (Yeakel, J.)...........................10

*Bd. of Regents v. Medtronic PLC*,
  Case No. A-17-CV-0942-LY, 2018 WL 4179080 (W.D. Tex. July 19, 2018)
  (Yeakel, J.) ........................................................................................................1, 7, 10

*Boston Sci.. Corp. v. Cook Grp. Inc.*,
  269 F. Supp. 3d 229 (D. Del. 2017)........................................................................8

*Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*,
  No. 17-cv-379, 2017 WL 3980155 (D. Del. Sept. 11, 2017).....................................8

*CAO Lighting, Inc. v. Light Efficient Design*,
  No. 4:16-cv-00482, 2017 WL 4556717 (D. Idaho Oct. 11, 2017) ...........................7

*In re Certain Touch-Controlled Mobile Devices, Computers, and Components
  Thereof*,
  Inv. No. 337-TA-1162 ..............................................................................................2

*In the Matter of Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*,
    Inv. No. 337-TA-1162, 2019 WL 2563518 (ITC June 19, 2019)...........................5

*Cherokee Nation v. United States*,
    124 F.3d 1413 (Fed. Cir. 1997).........................................................18

*In re Cray*,
    871 F.3d 1355 (Fed. Cir. 2017).................................................6, 7, 10

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
    No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018)
    (Bryson, J.).......................................................................6, 10

*Flamm v. Samsung Elecs. Co., Ltd.*,
    No. 1:15-cv-613-LY (W.D. Tex. Apr. 22, 2016) (Yeakel, J.) ..............................9

*Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*,
    No. 17-cv-01803, 2017 WL 4155347 (N.D. Cal. Aug. 29, 2017) ...........................8

*Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*,
    290 F. Supp. 3d 599 (N.D. Tex. 2017) ..................................................7

*Google Inc. v. Creative Labs, Inc.*,
    No. 16-cv-02628-JST, 2016 WL 6947564 (N.D. Cal. Nov. 28, 2016)...................20

*In re Google*,
    No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ...............................14

*Hildebrand v. Wilmar Corp.*,
    No. 17-cv-02821, 2018 WL 1535505 (D. Colo. Mar. 29, 2018) ...........................7

*Interactive Toybox v. Walt Disney Co.*,
    Case No. 1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018).................7

*JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*,
    No. 3:16-cv-03153, 2017 WL 4512501 (M.D. Tenn. Oct. 10, 2017)......................8

*Kabb, Inc. v. Sutera*,
    No. 91-cv-3551, 1992 WL 245546 (N.D. Tex. Sept. 4, 1992) ............................8

*Lincoln Elec. Co. v. Atl. China Welding Consumables*,
    No. 1:09 CV 1844, 2010 U.S. Dist. LEXIS 2721 (N.D. Ohio Jan. 4, 2010) .............19

*Logan v. Hormel Foods Corp.*,
    No. 6:04-CV-211, 2004 WL 5216126 (E.D. Tex. Aug. 25, 2004).........................20

*LoganTree LP v. Garmin Int'l, Inc.*,
    No. SA-17-CA-0098, 2017 WL 2842870 (W.D. Tex. June 22, 2017)....................................8

*Magnacoustics Inc. v. Resonance Tech. Co.*,
    132 F.3d 49 (Fed. Cir. 1997)...........................................................................................8

*Minka Lighting, Inc. v. Trans Globe Imps., Inc.*,
    No. 3:02-CV-2538, 2003 WL 21251684 (N.D. Tex. May 23, 2003) ....................................12

*Neodron Ltd. v. Lenovo Grp. Ltd.*,
    Case No. 6:19-cv-320-ADA, Dkt. 1 (W.D. Tex. May 21, 2019) ........................................2, 5

*Neodron Ltd. v. Motorola Mobility LLC*,
    6:19-cv-00322 (W.D. Tex) ...............................................................................................2

*Neodron Ltd. v. Motorola Mobility LLC*,
    Case No. 6:19-cv-322-ADA, Dkt. 1 (W.D. Tex. May 21, 2019) ...........................................5

*OptoLum, Inc. v. Cree, Inc.*,
    No. 16-cv-03828, 2017 WL 3130642 (D. Ariz. July 24, 2017)..............................................8

*Patent Holder LLC v. Lone Wolf Distribs., Inc.*,
    No. 17-23060-CIV, 2017 WL 5032989 (S.D. Fla. Nov. 1, 2017) ...........................................7

*Personal Audio LLC v. Google Inc.*,
    Case No. 1:15-cv-250, 2017 WL 598886 (E.D. Tex. Dec. 1, 2017) .......................................6

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) .............................................................................................8

*Reflection, LLC v. Spire Collective LLC*,
    No. 17-cv-1603, 2018 WL 310184 (S.D. Cal. Jan. 5, 2018) ................................................7

*Ruth v. Eagle-Pitcher Co.*,
    225 F.2d 527 (10th Cir. 1955) .........................................................................................13

*SanDisk Corp. v. Phison Elecs. Corp.*,
    538 F. Supp. 2d 1060 (W.D. Wisc. 2008)..........................................................................20

*Soverain IP, LLC v. AT&T, Inc.*,
    No. 2:17-cv-293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017), *report and
    recommendation adopted* 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017)................................7

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
    282 F. Supp. 3d 916 (E.D. Va. 2017) ...............................................................................7

*Talsk Research Inc. v. Evernote Corp.*,
    No. 16-cv-2167, 2017 WL 4269004 (N.D. Ill. Sept. 26, 2017)..............................................8

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   137 S. Ct. 1514 (2017) ................................................................................6

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) .................................................................14

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .......................................................................9

*In re Volkswagen of Am.*,
   545 F.3d 304 (5th Cir. 2008) ..............................................................8, 9, 12

*Wet Sounds, Inc. v. PowerBass USA, Inc.*,
   No. CV H-17-3258, 2018 WL 1811354 (S.D. Tex. Apr. 17, 2018) .........7

*Zenith Elecs., LLC v. Sony Corp.*,
   No. 11-CV-02439, 2011 WL 2982377 (N.D. Cal. July 22, 2011) .........15

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) ...........................................................6, 12

**Federal Statutes**

28 U.S.C. § 1400(b) ....................................................................6, 7, 8, 9

28 U.S.C. § 1404(a) ...........................................................................11

28 U.S.C. § 1406(a) .............................................................................8

28 U.S.C. § 1659 ..........................................................................15, 16

**Rules**

Fed. R. Civ. P. 12(b)(3) .................................................................1, 9, 20

Fed. R. Civ. P. 45(c) ..........................................................................13

**Other Authorities**

H.R. Rep. No. 103-826(I) ......................................................................20

## I.    INTRODUCTION: VENUE IS IMPROPER IN THE WESTERN DISTRICT OF TEXAS

Defendants Lenovo (United States) Inc. ("Lenovo") and Motorola Mobility LLC ("Motorola") are not incorporated in Texas.  Lenovo and Motorola do not have a regular and established place of business in the Western District of Texas ("WDTX").  And Lenovo and Motorola have not committed acts of infringement in the WDTX.  Yet, that is the exact venue Plaintiff Neodron Ltd. ("Neodron") has chosen to sue Lenovo and Motorola for patent infringement, generically alleging that, "upon information and belief," venue is appropriate here. Dkt. No. 1 at 4 ¶ 12 n.1.  This "information and belief" was based on (1) the location of third-party owned and operated service centers; (2) a belief that Lenovo and Motorola employ employees in the district and advertise jobs in Texas; and (3) the assertion that Motorola is "a subsidiary of Lenovo Group Ltd."  None is sufficient for venue.

First, caselaw is clear that the location of third-party owned and operated business locations cannot be imputed to a defendant for venue purposes.  *Bd. of Regents v. Medtronic PLC*, Case No. A-17-CV-0942-LY, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (Yeakel, J.).  Second, neither Lenovo nor Motorola have places of business in the WDTX.[1]  Third, whether Motorola is a subsidiary of Lenovo Group Ltd. (an entity that has not yet been served in this action) is irrelevant as to whether venue is appropriate as to Motorola.  *AGIS Software Dev., LLC v. ZTE Corp.*, 2018 WL 4854023, at *4 (E.D. Tex. Sept. 28, 2018).  Accordingly, venue in the WDTX is not appropriate, and this case should be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3).

Alternatively, if this Court chooses to transfer the case in lieu of dismissal, Lenovo and Motorola respectfully submit that the Northern District of California (NDCA) is both a proper and

---

[1] Lenovo employs one work-from-home employee in the WDTX and Motorola operates a location in the Dallas/Ft. Worth area, which is in the Northern District of Texas.  Johnson Decl. at ¶ 14; Merrit Decl. at ¶ 7.

the most convenient forum for this dispute.  First, the NDCA is more convenient for Lenovo and Motorola witnesses given that Lenovo operates facilities there and Motorola employs employees there.  Johnson Decl. at ¶ 5; Merrit Decl. at ¶ 5.  Second, in a proceeding before the International Trade Commission ("ITC"), *In re Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*, Inv. No. 337-TA-1162 ("Parallel ITC Action"), where Neodron is asserting related patents covering the *same* technology and the *same* products, Neodron has served third-party subpoenas upon multiple entities in California, at least three of which are located in the NDCA.[2]  Neodron has not served third-party subpoenas on any Texas-based entities.  Accordingly, entities in the NDCA will likely have documents and witnesses relevant to this case, further highlighting that venue there would be more convenient.

Finally, while Lenovo and Motorola would prefer dismissal, or alternatively transfer to the NDCA, a stay of this action would also be reasonable and appropriate given the significant overlap of the issues likely to be litigated in this case, the currently stayed WDTX cases,[3] and the Parallel ITC Action.

## II.  FACTUAL BACKGROUND:  NEITHER LENOVO, MOTOROLA, NOR NEODRON RESIDE IN OR HAVE A REGULAR, ESTABLISHED PLACE OF BUSINESS IN THE WDTX

### A.  Lenovo Is a Delaware Corporation, with no Offices in Texas, and with no Regular, Established Place of Business in the WDTX

Lenovo is a Delaware corporation with its principal place of business at 8001 Development Drive, Morrisville, North Carolina, 27560.  Johnson Decl. at ¶ 2.  The complaint alleges that

---

[2] *See, e.g.*, Lavenue Decl. Ex. A (subpoena to FocalTech Systems, Inc., located in San Jose, CA), Ex. B (subpoena to Elan Information Technology Group, located in Cupertino, CA), Ex. C (subpoena to Synaptics, Inc., located in San Jose, CA), Ex. D (subpoena to Goodix Technology, Inc., located in San Diego, CA).

[3] *Neodron Ltd. v. Lenovo Group Ltd.*, 6:19-cv-00320 (W.D. Tex); *Neodron Ltd. v. Motorola Mobility LLC*, 6:19-cv-00322 (W.D. Tex).

"Defendants" (without indicating whether the Lenovo entities or Motorola) have a regular and established place of business in the WDTX by pointing to a website listing third-party service centers in Texas that apparently repair Lenovo machines. Dkt. 1 at ¶ 12 n.1. But each of the listings on the website Neodron cites corresponds to a separate company (for example, the "The Laptop Specialist" and "Dean Thedford Office Supply"); none of the service centers are owned by Lenovo or Motorola:

| Service Center | Address | Distance |
|---|---|---|
| Great South Texas Corp | 814 ARION PKWY<br>SAN ANTONIO, TX, 78216-2835<br>Tel: 2103690300 | Distanza: 64 Miles |
| BJ Associates Of San Antonio LLC (The Laptop Specialist) | 10823 GULFDALE ST<br>SAN ANTONIO, TX, 78216-3608<br>Tel: 2103444563 | Distanza: 65 Miles |
| Intech Southwest Services, LLC. (Intech Southwest) | 4778 Research drive<br>San Antonio, TX, 78240<br>Tel: 210-690-0000 | Distanza: 69 Miles |
| Micro Technologies (Computer Express)<br>10130 HUEBNER RD | SAN ANTONIO, TX, 78240-1372<br>Tel: 2104904700 | Distanza: 69 Miles |
| BJ Associates Of San Antonio LLC (The Laptop Specialist) | 10823 GULFDALE ST<br>SAN ANTONIO, TX, 78216-3608<br>Tel: 2103444563 | Audio Video |
| Intech Southwest Services, LLC. (Intech Southwest) | 4778 Research drive<br>San Antonio, TX, 78240<br>Tel: 210-690-0000 | A |
| Micro Technologies (Computer Express)<br>10130 HUEBNER RD | SAN ANTONIO, TX, 78240-1372<br>Tel: 2104904700 | A |
| Techville, Inc. (MicroAge Computer Store) | 11343 N CENTRAL EXPY<br>DALLAS, TX, 75243-6703<br>Tel: 2147397033 | A |
| Technology Assets LLC (Global Asset) | 1815 Monetary Ln. Suite 100<br>Carrollton, TX, 75006<br>Tel: 972-695-8600 | A |
| Dean Thedford Office Supply | 123 W COLLIN ST<br>CORSICANA, TX, 75110-5222<br>Tel: 9038746594 | Audio Video |
| Virtual Communication Specialists (Virtual Communication) | 1550 ROCKY RIDGE RD<br>ATHENS, TX, 75751-5427<br>Tel: 9036810499 | Audio Video |
| Quality High-Tech Services, Inc. | 11807 Forestgate Dr.<br>Dallas, TX, 75243<br>Tel: 9722316696 | Audio Video |
| Techville, Inc. (MicroAge Computer Store) | 11343 N CENTRAL EXPY<br>DALLAS, TX, 75243-6703<br>Tel: 2147397033 | Audio Video |

Ask Tech Support Online 24/7
Connect 1-on-1 with a Tech Support Specialist and Get Your Answer in Minutes, 24/7.
Ad JustAnswer
Visit Site

Categories

ALL CENTERS

PRINTER SERVICES

AIR CONDITIONERS

None of these companies are owned by Lenovo or Motorola

Ex. E (annotated screen shot of https://www.service-center-locator.com/lenovo/texas/lenovo-austin-texas.htm); Johnson Decl. at ¶ 7; Merrit Decl. at ¶ 4. Lenovo has no regular and established place of business in Texas.

Neodron's complaint alleges that "Defendants" (again without specifying whether the Lenovo entities or Motorola) "employ employees and advertise jobs in the WDTX." Dkt. 1 at ¶ 12

n.1.  Lenovo has exactly one work-from-home employee in the WDTX.  Johnson Decl. at ¶ 14.

While Lenovo advertises available job openings in Texas, Lenovo's Texas openings are flexible

with respect to location and are intended to be work-from-home jobs.  *Id.* at ¶¶ 10–12.  Lenovo

advertises all available job openings through its web page, https://lenovocareers.com/.   As of

August 8, 2019, there were 204 open positions available throughout the United States, of which

six are offered within Texas.  *Id.* at ¶ 9.  Of these six, three are located in the Dallas/Fort Worth

area, not in the WDTX.  *Id.*  Of the remaining three, all are meant to be work-from-home positions.

*Id.* at ¶¶ 10–12.  One is expressly advertised with the location "flexible" in Houston, Dallas, or

Austin and another indicates that the position requires 50% travel.  Again, all are meant to be work-

from-home.  *Id.*

**B.     Motorola Is a Delaware Corporation with no Regular, Established Place of Business in the WDTX**

Motorola is a Delaware corporation with its headquarters and principal place of business

at 222 West Merchandise Mart Plaza, Suite 1800, Chicago, Illinois 60654.  Merrit Decl. at ¶ 2.

The complaint is bare bones with respect to allegations of venue for Motorola, and simply alleges

that "Defendants have a regular established place of business in the District, including multiple

service centers in Austin and San Antonio, Texas, and Defendants employ employees and advertise

jobs in this District."  Dkt. 1 at ¶ 12. Again, these allegations fail to specify if they apply to the

Lenovo entities or Motorola.

In addition to its Chicago headquarters, as of the filing date of the complaint, June 28,

2019, Motorola had a single office with only 11 employees in Texas, and that office is located in

Fort Worth, not in the WDTX.  Merrit Decl. at ¶ 7.

**C.    Other than Litigation Activity, Neodron Does Not Have any Presence in or Connection to Texas**

Neodron is a nonpracticing entity that was incorporated in Ireland in December 2018. Since its inception, Neodron's activity has been to assert patents in the ITC and the WDTX.  In May 2019, Neodron asserted a number of patents in the Parallel ITC Action relating to touchscreen technology against multiple respondents, including Lenovo and Motorola.[4]  *See In the Matter of Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*, Inv. No. 337-TA-1162, 2019 WL 2563518, Notice of Investigation (ITC June 19, 2019) (naming Amazon.com, Inc., Dell Technologies Inc., HP Inc., Lenovo Group Ltd., Lenovo (United States) Inc., Microsoft Corporation, Motorola Mobility LLC, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. as respondents).  Neodron also asserted the same patents against defendants in the WDTX in May 2019.[5]  The Parallel ITC Action is progressing while the WDTX cases have been stayed.  *See, e.g.*, *Neodron Ltd. v. Lenovo Grp. Ltd.*, Case No. 6:19-cv-320-ADA, Dkt. 16 (W.D. Tex. June 26, 2019) (staying case as to Lenovo); *Neodron Ltd. v. Motorola Mobility, LLC*, Case No. 6:19-cv-322-ADA, Dkt. 14 (W.D. Tex. July 1, 2019) (staying case as to Motorola).

Since the first round of WDTX cases were stayed pending resolution of the Parallel ITC Action, in June 2019, Neodron filed a second round of complaints against the same parties asserting various patents, also related to touch screen technology.  With respect to Lenovo and Motorola, Neodron now asserts three additional patents—two of which are related to the asserted

---

[4] In the Parallel ITC Action and companion WDTX cases, Neodron asserts U.S. Patent Nos. 8,432,173 ("the '173 patent"); 8,791,910 ("the '910 patent"); and 9,372,580 ("the '580 patent") against Lenovo and Motorola.  Neodron additionally asserts U.S. Patent No. 9,024,790 ("the '790 patent") against Lenovo.

[5] *Neodron Ltd. v. Lenovo Grp. Ltd.*, Case No. 6:19-cv-320-ADA, Dkt. 1 (W.D. Tex. May 21, 2019) (asserting the '173 patent, '910 patent, '790 patent, and '580 patent against Lenovo); *Neodron Ltd. v. Motorola Mobility LLC*, Case No. 6:19-cv-322-ADA, Dkt. 1 (W.D. Tex. May 21, 2019) (asserting the '173 patent, '910 patent, and '580 patent against Motorola).

patents in Parallel ITC Action—against some of the same accused devices.  But other than this patent litigation activity, Neodron has no presence whatsoever in Texas.

## III.    STATEMENT OF LAW:  IMPROPER VENUE REQUIRES DISMISSAL OR TRANSFER TO A PROPER AND CONVENIENT FORUM

### A.    Venue Is Only Proper Where (1) the Defendant Resides or (2) Has a Regular, Established Place of Business and Has Committed Acts of Infringement

Patent infringement complaints are governed exclusively by the special venue rules of 28 U.S.C. § 1400(b).  *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017).  Under § 1400(b), venue is proper only "[1] where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business."  A domestic corporate defendant resides only in its state of incorporation.  *See TC Heartland*, 137 S. Ct. at 1517.  A regular and established place of business has three requirements:  "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  The facts for venue must be current as of the date of filing the complaint.  *See Personal Audio LLC v. Google Inc.*, Case No. 1:15-cv-250, 2017 WL 598886, at *12 (E.D. Tex. Dec. 1, 2017).  Plaintiffs bear the burden of proving that venue is appropriate when challenged.  *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

### B.    Venue Over a Defendant Cannot Be Established by Imputing the Location of Third Parties Without Collapsing the Corporate Form

The law is clear that venue cannot be imputed to a defendant based on the contacts of a third party unless there is a reason to collapse the separate corporate forms.  *See, e.g.*, *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (Bryson, J.) (collecting cases).  The Federal Circuit has emphasized that

6

any physical location forming the basis of venue in a district must be "*of the defendant*," and "not solely a place of the defendant's employee." *In re Cray*, 871 F.3d at 1363 (emphasis in original).

Instructive on the issue of whether a third party's location can be imputed to a defendant is *Board of Regents v. Medtronic PLC*, Case No. A-17-CV-0942-LY, 2018 WL 4179080 (W.D. Tex. July 19, 2018) (Yeakel, J.).  Initially, the court there found that defendant Medtronic had "ratified" in-district locations of a separate company for patent-venue purposes by listing the place of business on Medtronic's website and directories, and placing a Medtronic sign on the exterior of the building.  *Id.* at *2.  On motion for reconsideration, the court found that Medtronic in fact had **not ratified** any of the in-district locations, because the different Medtronic entities maintained corporate formalities.  *Id.*  Thus, absent collapsing the corporate forms, third parties' locations cannot form the basis of venue over a defendant.[6]

---

[6] *See also Interactive Toybox v. Walt Disney Co.*, Case No. 1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) (not imputing retail Disney stores to parent Disney company for venue purposes); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916 (E.D. Va. 2017) (not imputing retail Lego stores to parent Lego company for venue purposes); *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted* 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017); *Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. CV H-17-3258, 2018 WL 1811354, at *2 (S.D. Tex. Apr. 17, 2018) (third-party distribution centers insufficient); *Hildebrand v. Wilmar Corp.*, No. 17-cv-02821, 2018 WL 1535505, at *3 (D. Colo. Mar. 29, 2018) (no venue where "the places of business on which Mr. Hildebrand bases venue are the physical locations of Wilmar's distributors, not those of Wilmar"); *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*, No. 5:14-cv-2022, 2018 WL 400326, at *9 n.8 (N.D. Ohio Jan. 12, 2018) ("While APS maintains that FPI has a close relationship with its distributors, this is still insufficient to establish that FPI has a regular and established business in the district, as any such physical presence of the distributor belongs to the distributor and not FPI."); *Reflection, LLC v. Spire Collective LLC*, No. 17-cv-1603, 2018 WL 310184, at *3 (S.D. Cal. Jan. 5, 2018) ("[A] distributor or subsidiary of a parent corporation selling the infringer's product does not demonstrate that a defendant has a regular and established business in this district."); *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 611 (N.D. Tex. 2017) (presence of third-party sales representatives insufficient); *Patent Holder LLC v. Lone Wolf Distribs., Inc.*, No. 17-23060-CIV, 2017 WL 5032989, at *6 (S.D. Fla. Nov. 1, 2017) (physical locations of defendant's dealers in the district "are irrelevant to the Court's analysis under § 1400(b)"); *CAO Lighting, Inc. v. Light Efficient Design*, No. 4:16-cv-00482, 2017 WL 4556717, at *3 (D. Idaho Oct. 11, 2017) (holding that physical location of distributors does not

### C.   Venue Must Be Proper for Every Defendant

Both venue and jurisdiction must be proper as to all defendants before a patent infringement action may be brought in a particular district. *AGIS Software*, 2018 WL 4854023, at *4 (citing *Magnacoustics Inc. v. Resonance Tech. Co.*, 132 F.3d 49 (Fed. Cir. 1997)).

### D.   Dismissal, Or Alternatively, Transfer Are Proper Remedies for Lack of Venue

If venue is improper, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Alternatively, at the court's discretion, a case improperly situated may be transferred to a proper and convenient forum. *See In re Radmax, Ltd.*, 720 F.3d 285, 287–88 (5th Cir. 2013). The threshold determination for transfer is that the transferee forum must be a proper venue. *Auto-Dril, Inc. v. National Oilwell Varco, L.P.*, C.A. No. 6:15-cv-00091, 2016 WL 6909479, at *3 (W.D. Tex. Jan. 28, 2016) (citing *In re Volkswagen of Am.*, 545 F.3d 304, 315 (5th Cir. 2008)

---

establish venue because the defendant "does not own, rent, lease, or occupy these locations or any other property or equipment in the state"); *JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*, No. 3:16-cv-03153, 2017 WL 4512501, at *3 (M.D. Tenn. Oct. 10, 2017) (holding that "business connections with distributors, retailers, and consumers in this district" are insufficient); *Talsk Research Inc. v. Evernote Corp.*, No. 16-cv-2167, 2017 WL 4269004, at *4 (N.D. Ill. Sept. 26, 2017) ("The Federal Circuit's decision in *Cray* leaves no room for Plaintiff to argue that the handful of non-employee, independent contractors present in this District constitute a 'regular and established place of business' for Defendant within the meaning of § 1400(b)."); *Boston Sci.. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 248 (D. Del. 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, No. 17-cv-379, 2017 WL 3980155, at *17 (D. Del. Sept. 11, 2017) (same); *Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*, No. 17-cv-01803, 2017 WL 4155347, at *7 (N.D. Cal. Aug. 29, 2017) (using third-party company to sell products is insufficient); *OptoLum, Inc. v. Cree, Inc.*, No. 16-cv-03828, 2017 WL 3130642, at *6 (D. Ariz. July 24, 2017) (selling infringing products at Home Depot stores in the district does not establish a place of business for the manufacturer); *LoganTree LP v. Garmin Int'l, Inc.*, No. SA-17-CA-0098, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) ("It is well settled that the mere presence of independent sales representatives does not constitute a 'regular and established place of business' for purposes of Section 1400(b)." (quoting *Kabb, Inc. v. Sutera*, No. 91-cv-3551, 1992 WL 245546, at *2 (N.D. Tex. Sept. 4, 1992))).

("*Volkswagen II*")).   To determine a convenient forum, this Court considers private and public interest factors.   *See Flamm v. Samsung Elecs. Co., Ltd.*, No. 1:15-cv-613-LY, Dkt. 53, Order Granting Motion to Transfer, at 1–2 (W.D. Tex. Apr. 22, 2016) (Yeakel, J.) (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")).   However, no single factor is controlling.   *Volkswagen II*, 545 F.3d at 315.   The private interest factors include:   "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive."   *Id.*   The public interest factors include:   "(1) the administrative difficulties flowing from court congestion; (2) the local interest of having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."   *Id.*

## IV.   VENUE IS IMPROPER IN THE WESTERN DISTRICT OF TEXAS UNDER RULE 12(b)(3)

Venue is not proper in the WDTX for either Lenovo or Motorola.   Under § 1400(b) and *TC Heartland*, venue is proper only where the defendant is incorporated "or where the defendant has committed acts of infringement and has a regular and established place of business."

### A.   Lenovo and Motorola Are Not Incorporated in this District

The first prong of the venue test—whether Lenovo and Motorola are incorporated in the WDTX—is not met.   Lenovo and Motorola are incorporated in Delaware, not Texas.   Johnson Decl. at ¶ 2; Merrit Decl. at ¶ 2.

### B.   Lenovo and Motorola Do Not Have "Regular and Established" Places of Business in the WDTX and Have Not Committed Acts of Infringement Here

The second prong of the test—whether Lenovo and Motorola have regular and established places of business and have committed acts of infringement in this district—is also not met.

Lenovo and Motorola do not own or operate any business locations in the WDTX.  The only physical locations Neodron hinges its venue allegations upon are "multiple service centers in Austin and San Antonio, Texas."  Dkt. 1 at ¶ 12.  None of these service centers are owned or operated by Lenovo or Motorola, and indeed advertise separate names of the businesses like the "The Laptop Specialist" and "Dean Thedford Office Supply."  Ex. E; Johnson Decl. at ¶ 7; Merrit Decl. at ¶ 4.  Accordingly, these locations cannot serve as the basis for venue over Lenovo or Motorola.  *EMED Techs.*, 2018 WL 2544564, at *2; *Medtronic*, 2018 WL 4179080, at *2; note 6, *supra*.

Moreover, Lenovo and Motorola deny any acts of infringement in this district.  Neodron provides no evidence of use of products within the forum beyond a bare, unsupported allegation in its complaint.  Dkt. 1 at ¶ 12.  But even if Neodron had such evidence—which it does not—it would not be enough, as there is no question that Lenovo and Motorola do not have a "regular and established place of business" in the WDTX.

## C.    Defendants' Employees or Job Advertisements Do Not Form the Basis of Venue in the WDTX

To the extent Neodron argues that any of Lenovo's or Motorola's "work at home" employees or advertised jobs are sufficient to establish venue, the case law directly contradicts any such argument.  A venue-establishing physical location must be "of the defendant," and "not solely a place of the defendant's employee."  *In re Cray*, 871 F.3d at 1363.  Where a defendant "does not own or lease any property in the Western District of Texas and does not maintain any business address in the Western District of Texas," and even if the defendant "has approximately 46 employees in the Western District of Texas, all of whom maintain home offices and do not work in locations that are owned, leaved, or otherwise controlled by [the defendant]," such employee presence did not satisfy the "regular and established place of business" rule.  *Bd. of Regents, The*

10

*Univ. of Tx. Sys. v. Boston Sci. Corp.*, No. A-17-CV-1103-LY, Dkt. 27, Order Granting to an Extent Motion to Dismiss for Lack of Venue, at 2 (W.D. Tex. Mar. 17, 2018) (Yeakel, J.). In this case, Lenovo and Motorola have even less of a connection to this district than the defendants in the *Boston Scientific* case. Specifically, here, only a single work-from-home employee of Lenovo resides in the WDTX. Collectively, Lenovo and Motorola employ only 12 employees in Texas, of which 11 are located outside of the WDTX. This is significantly fewer than the 46 in-district employees in the *Boston Scientific* case. Thus, again, there is no basis to find venue over Lenovo or Motorola.

### D. Whether Motorola Is a Subsidiary of Lenovo Group Ltd. Is Irrelevant

To the extent Neodron argues that Motorola is subject to venue because it is a subsidiary of Lenovo Group Ltd. (an entity that has not been served in the present action), Neodron is not correct. *See* Dkt. 1 at ¶ 12 n.1. Venue must be appropriate for *each* defendant. *AGIS Software*, 2018 WL 4854023, at *4.

## V. ALTERNATIVELY, IF DISMISSAL IS NOT GRANTED, DEFENDANTS CONSENT TO TRANSFER TO THE NDCA

Lenovo and Motorola respectfully request that, due to Neodron's venue pleading deficiency, this case be dismissed. However, if the Court does not dismiss, transfer of this case to the NDCA is requested as an alternative remedy. The NDCA is an appropriate and most convenient forum for the case, and in weighing the private and public interest factors, it is clear that the NDCA is the proper forum for resolution of this case.

### A. The NDCA Is an Appropriate Forum

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The NDCA is

an appropriate forum for Lenovo and Motorola as they maintain offices and employees within the NDCA.  Johnson Decl. at ¶ 15; Merrit Decl. at ¶ 5.  Given that Neodron accuses Lenovo and Motorola of soliciting sales of allegedly infringing products nationwide, those same allegations would apply to the NDCA, although Lenovo and Motorola expressly deny all allegations of infringement.  Thus, this action could have been brought in the NDCA.

## B.     The NDCA Is the Most Convenient Forum

An analysis of both the private and public interest factors proves that the NDCA is the most convenient forum.  Although the moving party bears the burden of showing that the transferee venue is "clearly more convenient" than the transferor venue (unlike proving venue, where Neodron bears the burden, *In re ZTE*, 890 F.3d at 1013), in this case the transferor venue is not a proper forum at all.  *Volkswagen II*, 545 F.3d at 315.

### 1.     The Private Interest Factors Favor the NDCA

As discussed below, each of the private interest factors favor transfer to the NDCA.

#### a.     The Relative Ease of Access to Sources of Proof

The first factor, "the relative ease of access to sources of proof," heavily favors transfer to the NDCA.  In a patent infringement action, the preferred forum is that which is the center of gravity of the accused activity.  *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1044 (S.D. Tex. 2007 (quoting *Minka Lighting, Inc. v. Trans Globe Imps., Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, at *3 (N.D. Tex. May 23, 2003)).

Here, the technology Neodron's patent infringement allegations implicate likely requires third-party proof.  That Neodron has subpoenaed a number of third parties (four of which are located in California, three of which are specifically in the NDCA) in the Parallel ITC Action highlights this point.  *See, e.g.*, n. 2.  Thus, a majority of the sources of proof are likely stored in the NDCA or are convenient to the NDCA, making the NDCA the "center of gravity" for this case.

### b.   The Availability of Compulsory Process to Secure the Attendance of Witnesses

The second factor, "the availability of compulsory process to secure the attendance of witnesses," also favors the NDCA.  A court cannot require a person that is "neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c).  Because Neodron believes third parties have information relevant to the Parallel ITC Action, which likely translates to information relevant to this action, this factor favors the NDCA where at least three of the subpoenaed third parties are located.  In contrast, Neodron has served no third-party subpoenas on any Texas-based entities.

### c.   Cost of Attendance for Willing Witnesses

The third factor, "the cost of attendance for willing witnesses," also favors the NDCA.  Given that Lenovo and Motorola have a location in the NDCA, chances are that willing witnesses—to the extent they exist—will more easily be located in the NDCA as opposed to the WDTX, which has no in-district employees from any of the parties in this case.

### d.   Other Practical Problems

The fourth factor, "all other practical problems that make trial of a case easy, expeditious, and inexpensive," also favors the NDCA.  Given the complex nature of patent cases, Congress intended them to be heard in the district where the pertinent witnesses and evidence reside.  *Ruth v. Eagle-Pitcher Co.*, 225 F.2d 527, 577 (10th Cir. 1955) (affirming dismissal from district where defendant was neither incorporated nor had committed acts of infringement).  Courts have explained that the patent-specific venue considerations are tied to the unique considerations of practicality and convenience in patent litigation.  *Id.*  In this case, as noted, the NDCA is a potential location of evidence, documents, and witnesses relevant to this action given the third-party

subpoenas of NDCA-based entities in the Parallel ITC Action and Lenovo's and Motorola's business location there.  The WDTX is not.

Finally, to the extent Neodron argues that the other co-pending cases in the WDTX require keeping this case here, the Federal Circuit has rejected that argument.  In *In re Google*, the Federal Circuit held that it "cannot be correct" that the "mere co-pendency of related suits in a particular district would automatically tip the balance in non-movant's favor."   No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017).  Accordingly, all private interest factors weigh in favor of transfer to the NDCA.

### 2.   The Public Interest Factors Favor the NDCA

Apart from neutral factors, the public interest favors transfer to the NDCA.

#### a.   Administrative Difficulties Flowing from Court Congestion

The first factor, "administrative difficulties flowing from court congestion," is neutral.

#### b.   Local Interest of Having Localized Interests Decided at Home

The second factor, "the local interest of having localized interests decided at home," favors the NDCA.  Courts have held that the mere sale of "several" or "some" allegedly infringing products in a given district is not enough to shift this factor.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).  That Lenovo and Motorola may sell some of the accused products in the WDTX does not equate to requiring a local resolution of this matter.  In the NDCA, in contrast, Lenovo and Motorola operate physical locations and house employees and there likely exists third-party evidence that would be pertinent to the allegations of infringement.  And other than Neodron's litigation activity, Ireland-based Neodron has no tie to Texas.

#### c.   Familiarity of the Forum with the Governing Law

The third factor, "familiarity of the forum with the law that will govern the case," is neutral because this case arises under federal patent law.  *See, e.g.*, *Amini*, 512 F. Supp. 2d at 1046.

14

### d. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The fourth factor, "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law," is neutral, because no such conflicts are expected in this case.

In sum, Lenovo and Motorola respectfully request dismissal of this case, but if the Court is not inclined to dismiss the case, transfer to the NDCA would be appropriate given the balance of the factors:

| Where Case Might Have Been Brought | Forum | |
|---|---|---|
| | WDTX | NDCA |
| | ✗ | ✓ |
| **Private Interest Factors** | | |
| Factor 1: "relative ease of access to sources of proof" | | ✓ |
| Factor 2: "the availability of compulsory process to secure the attendance of witnesses" | | ✓ |
| Factor 3: "the cost of attendance for willing witnesses" | | ✓ |
| Factor 4: "all other practical problems that make trial of a case easy, expeditious, and inexpensive" | | ✓ |
| **Public Interest Factors** | | |
| Factor 1: "administrative difficulties flowing from court congestion" | NEUTRAL | |
| Factor 2: "the local interest of having localized interests decided at home" | | ✓ |
| Factor 3: "familiarity of the forum with the law that will govern the case" | NEUTRAL | |
| Factor 4: "avoidance of unnecessary problems of conflict of laws or in the application of foreign law" | NEUTRAL | |

## VI. A STAY OF THIS CASE IS ALSO APPROPRIATE

In enacting 28 U.S.C. § 1659, Congress intended that any litigation involving patents at issue before the ITC be stayed *and* that courts use their inherent power to control their own dockets to stay any litigation involving related patents. *Avago Techs. U.S., Inc. v. Iptronics, Inc*., No. 5:10-CV-02863-EJD, 2013 WL 623042, at *2 (N.D. Cal. Feb. 15, 2013). "'Congress explicitly intended that district courts should consider using their discretionary power to stay patent infringement litigation that is related to, but not duplicative of, an action before the ITC.'" *Id.* (quoting *Zenith*

*Elecs., LLC v. Sony Corp.*, No. 11-CV-02439, 2011 WL 2982377, at *3–4 (N.D. Cal. July 22, 2011)).  The parties conferred and Neodron indicated it would oppose entry of a stay.

By filing the pending action, Neodron has essentially circumvented the purpose of the rules regarding mandatory stays of district court actions in light of parallel ITC investigations. *See* 28 U.S.C. § 1659.  Specifically, since the first round of WDTX complaints were mandatorily stayed due to overlap of patents in the Parallel ITC Action, Neodron decided to file a second round of complaints in the WDTX, asserting related patents to those at issue in the Parallel ITC Action against some of the same Lenovo and Motorola products.  It is precisely these types of cases that Congress intended be stayed pending an ITC investigation.  Thus, if this Court is not inclined to dismiss or transfer this action, Lenovo and Motorola respectfully request that this Court exercise its discretionary powers and stay this action pending resolution of the Parallel ITC Action.

### A.   The Issues in this Case Significantly Overlap with the Parallel ITC Action and the Currently Stayed WDTX Cases

Because the patents, technology, and accused products at issue here have significant overlap with those at issue in the Parallel ITC Action and currently stayed WDTX cases, staying the present action is reasonable and warranted.  Specifically, here, as in the Parallel ITC Action and the currently stayed WDTX cases, Neodron asserts patents relating to touchscreen technology. *See* Dkt. 1 at ¶ 1 (describing the asserted patents as "generally relat[ing] to touchscreen technology"); *see also* n. 4 & 5 (currently stayed WDTX complaints use the same language to describe the asserted technology).  In fact, two of the patents asserted in this case are related to two of the asserted patents in the Parallel ITC Action.  Dkt. 1 at ¶ 15.  The '286 Patent asserted here is formally related to the '790 Patent in the Parallel ITC Action.[7]  The '286 Patent and '790

---

[7] The '286 Patent issued from U.S. Patent Application No. 12/899,229 (the "'229 Application") (Dkt. 1 at Ex. 1), and the '790 Patent issued from U.S. Patent Application No. 13/347,312, which

Patent share the same specification and similar claims. *Compare* Dkt. 1 at Ex. 1 ('286 Patent) with Case No. 19-cv-320-ADA, Dkt. 1 at Ex. 6 ('790 Patent). The patents also share several claim terms. *Id.* For example, the claims in both patents include a "plurality of keys" and "control logic," where key assignment is "biased in favor of" a particular key. *Id.* The patents share the same inventor.

Similarly, the '547 Patent asserted here is formally related to the '173 Patent in the Parallel ITC Action.[8] Because of their relationship, the two patents contain similar specifications. *Compare* Dkt. 1 at Ex. 5 ('547 Patent) with Case No. 19-cv-320-ADA, Dkt. 1 at Ex. 1 ('173 Patent). For example, four of the five figures are the same both patents. Dkt. 1 at Ex. 5 at 4–8; Case No. 19-cv-320-ADA, Dkt. 1 at Ex. 1 at 3–6. And the two patents contain similar claims, for example, both patents refer to a "sensing element" and claim adjusting a parameter based on a capacitive sensor. Dkt. 1 at Ex. 5 at c1. 1; Case No. 19-cv-320-ADA, Dkt. 1 at Ex. 1 at cl. 1. These two patents also share the same inventor.

The third patent in this action, the '237 Patent, is also directed to touch screen technology. Dkt. 1 at ¶ 1–5. The issues and discovery related to the '237 Patent are, therefore, the same or closely related to the issues and discovery in the Parallel ITC Action.

---

is a continuation of the '229 Application. Case No. 19-cv-320-ADA, Dkt. 1 at Ex. 6. The '286 Patent in this action is thus the parent of '790 Patent in the Parallel ITC Action.

[8] The '547 Patent issued from U.S. Application No. 12/939,816 and is a continuation of U.S. Application No. 12/317,305, which is a continuation-in-part of U.S. Application No. 11/868,566 (the "'566 Application"). Dkt. 1 at Ex. 5. The '547 Patent also claims priority to provisional Application No. 60/862,358. *Id.* Similarly, the '173 Patent at issue in the ITC is a continuation of U.S. Application No. 12//703,614, which is a continuation of the same '566 Application. Case No. 19-cv-320-ADA, Dkt. 1 at Ex. 1. The '173 Patent also claims priority to the same provisional, Application No. 60/862,358. *Id.* The '547 Patent in this action and the '173 Patent in the Parallel ITC Action are thus siblings in that the two patents share a grandparent and a provisional application, and they claim the same priority date.

In addition to asserting related patents and patents directed to the same technology, the complaint in this case alleges patent infringement against some of the same products accused in the Parallel ITC Action. Specifically, Neodron accuses the Lenovo Yoga 730 and Motorola Moto G6 in both actions. *See, e.g.*, Dkt. 1 at ¶ 15 (naming Lenovo Yoga 730 and Motorola Moto G6 as Accused Products); Parallel ITC Action, May 23, 2019 First Amended Complaint at ¶ 101 (naming Lenovo Yoga 730 as a Lenovo Accused Product) and ¶ 125 (naming Motorola Moto G6 as a Motorola Accused Product).

### B.    The Court May Stay This Action Pursuant to its Inherent Authority

A district court has inherent authority to stay its proceedings. *B & D Produce Sales, LLC v. Packman1, Inc.*, No. SA-16-CV-99-XR, 2016 WL 4435275 (W.D. Tex. Aug. 19, 2016).  A federal trial court may even stay its own proceedings for an indefinite period of time. *Cherokee Nation v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).  A discretionary stay is particularly proper in light of a related ITC investigation, even when the patents in both actions do not overlap. *Avago*, 2013 WL 623042, at *2–4.

Courts consider three factors in determining if a stay is proper: "(1) any potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources saved by avoiding duplicative litigation." *B & D Produce Sales*, 2016 WL 4435275 (citing cases).  In deciding a motion to stay a proceeding, a court should be "guided by the policies of justice and efficiency." *Id.* (citation omitted).  In this case, all three factors favor staying this case, and a stay would further promote justice and efficiency.

### 1.    No Prejudice Would Result to Neodron if this Case Is Stayed

The case is in its infancy. Discovery has not commenced, and no trial date has been set. Further, a stay at this stage would be the least harmful to the parties because the case can be stayed before the parties incur significant litigation expenses. *See, e.g.*, *Alloc, Inc. v. Unilin Decor N.V.*,

No. 03-253-GMS, 2003 WL 21640372, at *3 (D. Del. July 11, 2003) (finding a discretionary stay pending reexamination appropriate when it occurs before substantial litigation-related expenses are incurred).  Further, because Neodron is a non-practicing entity, it will not lose any market share for sales of its own products during a stay.  Thus, there is no harm or prejudice to Neodron by staying the present case.

### 2.      Lenovo and Motorola Would Suffer Significant Hardship if this Case Is Not Stayed

In stark contrast, given the overlap in technology, related patents, and accused products, there would be significant hardship for Lenovo and Motorola if this case were to continue, forcing them to defend overlapping issues on two fronts, here and at the ITC.  Several of the witnesses will overlap.  For example, the inventor of several of the patents overlap, some of the same relevant third parties are likely to overlap, and witnesses with information about the accused Lenovo and Motorola products are also likely overlap.  The same is true with respect to potentially relevant documents and information. Thus, if forced to proceed here, there will be significant duplication of efforts.  But such hardship is easily avoidable with a stay.

### 3.      Staying this Case Would Save Judicial Resources

Given the significant overlap in the issues to be decided by the ITC and this Court, including claim construction, validity, and infringement, and the likely overlap in witnesses, a stay would conserve judicial resources.  *Alloc,* 2003 WL 21640372, at *2; *Lincoln Elec. Co. v. Atl. China Welding Consumables*, No. 1:09 CV 1844, 2010 U.S. Dist. LEXIS 2721, at *9 (N.D. Ohio Jan. 4, 2010); *Arris Enters. LLC v. Sony Corp.*, No. 17-cv-02669-BLF, 2017 WL 3283937, at *3–4 (N.D. Cal. Aug. 1, 2017); *Avago*, 2013 WL 623042, at *3.

A discretionary stay should be used to avoid inconsistent parallel proceedings and potentially inconsistent rulings.  *See e.g.*, *Lincoln*, 2010 U.S. Dist. LEXIS 2721, at *11 (granting

a stay pending an ITC investigation, in part to avoid inconsistent conflicting litigation and potentially conflicting rulings); *see also B & D Produce Sales*, 2016 WL 4435275, at *2 (staying a case in part because parallel litigation before an administrative agency would cause "duplicative litigation and the possibility of inconsistent rulings").  Inconsistent parallel claim construction, for instance, can be avoided with a stay.  *SanDisk Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1066 (W.D. Wisc. 2008) (ordering a stay in part because of shared claim terms); *see Logan v. Hormel Foods Corp.*, No. 6:04-CV-211, 2004 WL 5216126, at *2 (E.D. Tex. Aug. 25, 2004) (transferring a case, in part, based on a "risk" of inconsistent claim constructions, and explaining that such a risk would "create greater uncertainty regarding the patent's scope, and impede the administration of justice").

Furthermore, courts have found that the discovery and the rulings in an ITC investigation, even if nonbinding, can benefit district court litigation involving the same products or similar technologies.  *Arris*, 2017 WL 3283937, at *3–4; *Sandisk*, 538 F. Supp. 2d at 1067 (quoting H.R.Rep. No. 103-826(I), at 142) ("the record developed in the proceeding before the commission may be used to 'expedite proceedings and provide useful information to the court'"); *Google Inc. v. Creative Labs, Inc.*, No. 16-cv-02628-JST, 2016 WL 6947564, at *2–3 (N.D. Cal. Nov. 28, 2016).  Thus, the interests of justice are better served by staying this action

## VII.   CONCLUSION

Lenovo and Motorola submit that this case should be dismissed for lack venue under Fed. R. Civ. P. 12(b)(3).  If the Court is not inclined to dismiss the case, it should be transferred to the NDCA.  Finally, a stay of the case pending resolution of the Parallel ITC Action would be an appropriate interim remedy.

Dated: August 23, 2019          /s/Lionel M. Lavenue
                                Lionel M. Lavenue, Esq.
                                lionel.lavenue@finnegan.com
                                FINNEGAN, HENDERSON, FARABOW,
                                GARRETT & DUNNER, LLP
                                Two Freedom Square
                                11955 Freedom Drive
                                Reston, VA 20190-5675
                                Tel:  (571) 203-2700
                                Fax: (202) 408-4400

                                ATTORNEY FOR DEFENDANTS
                                LENOVO (UNITED STATES) INC., and
                                MOTOROLA MOBILITY LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2019, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send a notification of such filing ("NEF") all

counsel of record who have appeared in this case.

<div align="right">

*/s/Lionel M. Lavenue*
Lionel M. Lavenue

</div>

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |  |
|---|---|---|
| **NEODRON LTD.,** | ) | |
| | ) | |
| | ) | **Case No. 6:19-CV-398-ADA** |
| *Plaintiff,* | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **LENOVO GROUP LTD., LENOVO** | ) | |
| **(UNITED STATES) INC., and** | ) | |
| **MOTOROLA MOBILITY LLC,** | ) | |
| | | |
| *Defendants.* | | |

**DECLARATION OF LIONEL LAVENUE IN SUPPORT OF MOTION TO DISMISS
FOR LACK OF VENUE, OR IN THE ALTERNATIVE, TO TRANSFER TO THE
NORTHERN DISTRICT OF CALIFORNIA**

I, Lionel Lavenue, declare and testify as follows:

1.     I am an attorney with the law firm Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP, counsel of record for Defendants Lenovo (United States) Inc., and Motorola Mobility LLC (together, "Defendants").  I am knowledgeable about the facts set forth in this declaration and could and would testify competently to them if called as a witness, unless otherwise stated.

*2.*     Attached as Exhibit A is a true and correct copy of *Subpoena Duces Tecem* and *Subpoena Ad Testificandum* to FocalTech Systems, Inc., submitted in the U.S. International Trade Commission Investigation No. 337-TA-1062 on July 19, 2019 by Plaintiff Neodron Ltd.

3.     Attached as Exhibit B is a true and correct copy of *Subpoena Duces Tecem* and *Subpoena Ad Testificandum* to Elan Information Technology Group, submitted in the U.S. International Trade Commission Investigation No. 337-TA-1062 on July 19, 2019 by Plaintiff Neodron Ltd.

4.      Attached as Exhibit C is a true and correct copy of *Subpoena Duces Tecem* and *Subpoena Ad Testificandum* to Synaptics, Inc., submitted in the U.S. International Trade Commission Investigation No. 337-TA-1062 on July 19, 2019 by Plaintiff Neodron Ltd.

5.      Attached as Exhibit D is a true and correct copy of *Subpoena Duces Tecem* and *Subpoena Ad Testificandum* to Goodix Technology Inc., submitted in the U.S. International Trade Commission Investigation No. 337-TA-1062 on July 19, 2019 by Plaintiff Neodron Ltd.

6.      Attached as Exhibit E is a true and correct copy of an annotated screen shot of website https://www.service-center-locator.com/lenovo/texas/lenovo-austin-texas.htm   (accessed August 23, 2019, 2019).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 23, 2019.

/s/Lionel M. Lavenue
Lionel M. Lavenue, Esq.
lionel.lavenue@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675
Tel:  (571) 203-2700
Fax: (202) 408-4400

ATTORNEY FOR DEFENDANTS LENOVO
(UNITED STATES) INC. and MOTOROLA
MOBILITY LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") all counsel of record who have appeared in this case.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue

# EXHIBIT A



12424 Wilshire Blvd.

Twelfth Floor

Los Angeles

California

90025

Tel 310.826.7474

Fax 310.826.6991

www.raklaw.com

Matthew D. Aichele
maichele@raklaw.com

July 19, 2019

**VIA FEDEX OVERNIGHT DELIVERY**

FocalTech Systems, Inc.
2033 Gateway Place, Suite 500
San Jose, CA  95110

Registered Agent:
Naiyu Pai
1413 Grant Road
Mountain View, CA 94040

Re:   *In the Matter of Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*, Inv. No. 337-TA-1162

Dear Sir/Madam:

Enclosed please find a Subpoena *Duces Tecum* and *Ad Testificandum* to FocalTech Systems, Inc. ("FocalTech") that was issued by the Administrative Law Judge in the above-referenced Investigation, which includes as Attachment B Order No. 1, the Protective Order in this Investigation. Please note that any confidential documents produced by FocalTech and labeled with the heading "Confidential Business Information Subject to Protective Order" will be maintained in accordance with Order No. 1.

Also enclosed is the Subpoena Application that was submitted to the ALJ, which sets forth the relevance of the documents requested in Attachment A of the subpoena.

If you have any questions, please do not hesitate to contact me at (202) 664-0623 or maichele@raklaw.com.

Very truly yours,

Russ, August & Kabat

*/s/ Matthew D. Aichele*
Matthew D. Aichele

Enclosures

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

| | |
|---|---|
| In the Matter of | |
| **CERTAIN TOUCH-CONTROLLED MOBILE DEVICES, COMPUTERS, AND COMPONENTS THEREOF** | Inv. No. 337-TA-1162 |

## SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM*

TO:

**FocalTech Systems, Inc.**
**2033 Gateway Place, Suite #500**
**San Jose, CA  95110**

**Registered Agent:**
**Naiyu Pai**
**1413 Grant Road**
**Mountain View, CA 94040**

**TAKE NOTICE:**  By authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(C)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by Complainant Neodron Ltd.  ("Neodron"),

**YOU ARE HEREBY ORDERED** to produce at Russ, August & Kabat, 12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025, on August 6, 2019, or at such other time and place agreed upon, all of the documents and things in your possession, custody, or control, which are listed and described in Attachment A. Such production will be for the purpose of inspection and copying, as desired.

If production of any document listed and described in Attachment A is withheld on the basis of a claim of privilege, each withheld document should be separately identified in a privileged document list. The privileged document list must identify each document separately, specifying

for each document at least: (1) the date; (2) author(s)/sender(s); (3) recipient(s), including copy recipients; and (4) general subject matter of the document. The sender(s) or the recipient(s) shall be identified by position and entity (corporation or firm, *etc.*) with which they are employed or associated. If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified. The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

If any of the documents or things listed and described in Attachment A are considered "confidential business information," as that term is defined in Protective Order (Order No. 1) attached hereto as Attachment B, such documents or things should be produced subject to the terms and provisions of the Protective Order.

**YOU ARE FURTHER HEREBY ORDERED** to present yourself for purposes of your deposition upon oral examination on August 22, 2019, at Russ, August & Kabat, 12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025, or at such other time and place agreed upon, concerning the subject matter set forth in Attachment A hereto.

This deposition will be taken before a Notary Public or other person authorized to administer oaths and will continue from day to day until completed. If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in the Protective Order attached hereto, such documents or things shall be produced subject to the terms and provisions of the Protective Order.

Any motion to limit or quash this subpoena shall be filed within **ten (10) days** after the receipt thereof. At the time of filing of any motion concerning this subpoena, two courtesy copies shall be served concurrently on the Administrative Law Judge at his office.

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set his hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this 19 day of _____ JULY _____, 2019.

Cameron Elliot
Administrative Law Judge
United States International Trade Commission

Presiding in *Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*, Inv. No. 337-TA-1162

3

## ATTACHMENT A

## DEFINITIONS

1.      The term "Commission" or "ITC" refers to the United States International Trade Commission.

2.      The term "Complainant" means and includes Complainant Neodron Ltd.

3.      The term "Investigation" means the above-captioned investigation, *Certain Touch-Controlled Mobile Devices, Computers, and Components*, United States International Trade Commission, Investigation No. 337-TA-1162.

4.      The term "Complaint" means the Complaint under Section 337 of the Tariff Act of 1930, as amended, filed by Complainant with the Secretary's Office of the United States International Trade Commission on May 22, 2019, as well as any supplement to or amended version of that Complaint, including the First Amended Complaint filed on May 23, 2019.

5.      The term "Amazon" means Amazon.com, Inc.

6.      The term "Dell" means Dell Technologies Inc.

7.      The term "HP" means HP Inc.

8.      The term "Lenovo" means Lenovo Group Ltd. and Lenovo (United States) Inc.

9.      The term "Microsoft" means Microsoft Corporation.

10.     The term "Motorola" means Motorola Mobility LLC.

11.     The term "Samsung" means Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

12.     The term "Respondents" means Amazon, Dell, HP, Lenovo, Microsoft, Motorola, and Samsung, jointly and severally.

13.     The terms "FocalTech," "you," and "your" mean and include, individually and collectively, FocalTech Systems, Inc., and all of its U.S. and foreign predecessors, parents, subsidiaries, sister companies, affiliates, divisions, licensees, franchisees, assigns, or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, salespersons, sales representatives, employees of such entities, and representatives and any person or entity acting on its behalf.

14.     The term "Patent Office" means the United States Patent and Trademark Office.

15.     The term "'173 Patent" means U.S. Patent No. 8,432,173.

16.     The term "'910 Patent" means U.S. Patent No. 8,791,910.

17.     The term "'790 Patent" means U.S. Patent No. 9,024,790.

18.     The term "'580 Patent" means U.S. Patent No. 9,372,580.

19.     The term "Asserted Patent(s)" means the '173 Patent, the '910 Patent, the '790 Patent, and the '580 Patent, individually and/or collectively.

20.     The term "Asserted Claim(s)" means the claims of the Asserted Patents asserted in the Complaint against Respondent.

21.     The term "Accused Product(s)" means and includes each model of touch-controlled mobile devices, including smartphone and tablet devices, computers, including notebook and laptop computers, and associated components thereof imported into the United States, sold for importation within the United States, and/or sold after importation into the United States by Respondents, for Respondents, on Respondents' behalf, or through a website owned, operated, and/or controlled by Respondents, including but not limited to the products and devices identified in the Complaint, and all versions and variations thereof, including models, versions, and

variations that may be imported or sold by or for Respondents in the future and during the course of this Investigation.

22.     The term "Responsive Touch Controller" means and includes each model of touch controller made or sold by you that is included in any Accused Product.

23.     The term "component" means a constituent part of a system, including but not limited to capacitive touch sensors, touchpads, touch controllers, touchscreens, and any other means for recognizing and processing touch input signals.

24.     The terms "document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined by Commission Rule 210.30 and Federal Rule of Civil Procedure 34, and include all things within the meaning and scope of that term as used in the Commission's Rules of Practice and Procedure, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, including without limitation the following items, whether printed, recorded, microfilmed, reproduced by any process, written, produced by hand, or recorded in any other way, and whether or not claimed to be privileged, confidential, or personal: letters; correspondence; memoranda; notes; reports; records; agreements; working papers; communications (including intradepartmental and interdepartmental communications); summaries or records of personal conversations; calendars; diaries; forecasts; statistical statements; graphs; laboratory or research reports and notebooks; charts; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigations; opinions or reports of consultants; patents and patent application materials; patent appraisals; printed publications; trademark applications, certificates of registration, opinions of counsel; memoranda of agreements; assignments; licenses; reports of or summaries of either negotiations within or without

the corporation or preparations for such; bulletins; material and manufacturing specifications; material packaging; manufacturing logs; equipment specifications and operating information; product packaging; designs; instructions; advertisements; literature; work assignments; memoranda of conversations; notes; notebooks; drafts; data sheets; worksheets; contracts; minute books of account; orders; invoices; statements; bills; checks; vouchers; photographs; drawings; charts; catalogs; brochures; computer files; computer discs; articles; manuals; pamphlets; advertisements; circulars; press releases; drafts of any documents; books; instruments; accounts; bills of sale; tapes; electronic communications including but not limited to e-mails; telegraphic communications; original or preliminary notes; and all other materials of any tangible medium of expression. Any comment or notation appearing on any document, and not a part of the original text, is to be considered a separate "document."

25.    The term "thing(s)" has the broadest meaning allowable under Commission Rule 210.30 and Federal Rules of Civil Procedure 34. This meaning encompasses any tangible object of any kind and nature other than a document, including without limitation prototypes, models, and physical specimens thereof.

26.    The term "person(s)" means any natural person, individual, group, or entity. The acts of a person shall include the acts of the person's directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the person's behalf.

27.    The term "communication(s)" means any oral, written, or other contact between two or more persons or entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including but not limited to letters, memoranda, telegrams, telefaxes, telecopies, e-mails, text messages, fact-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

4

28.     The term "identify" or "identification," when used with respect to any natural person, means that the following information shall be provided:  the person's full name; last known home address; last known business address and telephone number; last known e-mail address; last known title or occupation; and last known employer.

29.     The term "identify" or "identification," when used with respect to any person other than a natural person, means that the following information shall be provided:  the person's name; the place of incorporation or organization; the principal place of business; and the nature of the business conducted by that person.

30.     The term "identify" or "identification," when used with respect to a document, means that the Bates number(s) or other litigation document control number(s) for that document shall be provided, or, if no such number exists, other information sufficient to locate that document, including but not limited to the following:  the date appearing on such document or, if no date appears on it, the approximate date the document was prepared; the identifying code, file number, title, or label; a general description of the document (e.g., letter, memorandum, drawing); the title or heading; the number of pages included in the document; the name of each person who signed or authorized the document; the name of each addressee; the name of each person having possession, custody, or control of the document; if the document existed at one time but does not presently exist, the reason(s) why it no longer exists and the identity of the last person having custody of it; and, if the document is in a foreign language, whether an English translation (partial or complete) of the document exists.

31.     The terms "entity" and "entities" mean any legal person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic person, business unit, or

collective organization, and any legal, governmental, organizational, or political subdivision thereof.

32.     The term "information" means information in any form, including but not limited to documentary, electronic, graphical, or tabular, and communicated by any means, including but not limited to orally, in writing, or via electronic communication.

33.     The term "relating to," "related to," "relate to," or "concerning," when referring to any given subject matter, means without limitation any information, document, or thing that in whole or in part and directly or indirectly relates to, concerns, regards, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to the particular subject matter identified.

34.     The term "including" means "including without limitation" and "including but not limited to."

35.     The terms "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each request in which they are used.

36.     Except where the context does not permit, the terms "each" and "any" shall mean any and all.

37.     The term "date" shall mean the exact date, if known, or the closest approximation to the exact date as can be specified, including without limitation, the year, month, week in a month, or part of a month.

38.     All other words are given their plain and ordinary meaning.

6

39.     If you find the meaning of any term in these Requests unclear, then you shall construe the term so as to render responsive any information, document, thing, or communication that might otherwise be rendered non-responsive.

40.     Any word written in the singular shall be construed as plural or vice versa in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope. The past tense as used in the below requests includes the present tense where the meaning is not distorted, and the verb form of a noun or pronoun may be used, as appropriate in particular context.

## **INSTRUCTIONS**

The following instructions are applicable to terms in each discovery request unless otherwise explicitly stated:

1.     In producing the documents and things requested, you shall furnish all documents and things known or available to you within your possession, custody, or control, wherever located (including outside the United States), regardless of whether such documents or things are possessed directly by you or by any of your agents, officers, employees, attorneys, representatives, or those acting on your behalf.

2.     If any documents responsive to these requests are withheld from production under a claim of privilege or other immunity from discovery, You shall provide a schedule of such withheld documents with enough detail for Complainant to assess the claim, including at least the following:  (a) the basis on which the privilege is claimed; (b) the names and titles of the author(s) of the document and all other persons participating in the preparation of the document; (c) the name of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed; (d) the date of the document; (e) a description of any accompanying material

transmitted with or attached to such document; (f) the number of pages in such document; and (g) whether any business or non-legal matter is contained or discussed in such document.

3.      If the attorney-client privilege, work product immunity, or any other applicable privilege or immunity is asserted in response to any discovery request, you must expressly make the claim when responding. Absent agreement among the Parties, you must also produce, within ten calendar days of the date on which responses to these requests are due, a withheld document log that describes the nature of the information not produced or disclosed in a manner that will enable Complainant to assess the claim. The withheld document log must separately identify each withheld document, communication, or item, and specify the following for each entry in accordance with 19 C.F.R. § 210.27(e)(1) (absent agreement under 19 C.F.R. § 210.27(e)(3) and the Administrative Law Judge's Ground Rules):

        a.      The date the information was created or communicated; the author(s) or speaker(s); all recipients; the employer and title of each author, speaker, or recipient, including whether that person is an attorney or patent agent; the general subject matter of the information; and the type of privilege or protection claimed; and

        b.      To the extent the claim of attorney-client privilege or work product immunity is not being asserted as to the entirety of a document, Respondent shall produce in redacted form that portion of the document not covered by such claim of privilege or immunity.

4.      If, after exercising due diligence, you are unable to determine the existence of any documents or things falling within a discovery request requesting identification of documents or things, you shall so state in your written response.

5.      All documents produced in response to a discovery request shall be the original or true complete copies of the original. If an English translation of any document produced exists, the English translation shall be produced.

6.      "Electronically stored information" or "ESI" must be produced in the following format, barring mutual agreement by the parties:

a.      Single-page group IV TIFFs in at least 600 dpi for black and white images, or .JPG for images produced in color, with images produced using a unique file name that will be the production number of that page (e.g., ABC000001.TIFF). The production number shall appear on the face of the image;

b.      Searchable text files at the document level (one text file for each document, rather than one text file for each page of a document) for each document bearing the name of the beginning production number for each document (text of native files to be extracted directly from native files where possible; OCR for paper documents), productions that contain foreign language documents shall be Unicode compliant, document level text files with a .txt extension will be provided where available. The text file name will correspond to the beginning production number of the image or native file. A field will be included in the DAT with the path to the corresponding text file;

c.      Database load files and cross reference files, e.g., Concordance default delimited file (metadata) and an Opticon-delimited file (image reference files), and including the following fields (to the extent the metadata is available): Beg Bates No.; End Bates No.; Bates Range; Bates Parentid; Attach Begin; Attach End; Page Count; From/Author; To/Recipient(s); CC; Bcc; Email Date Sent; Email Time

9

Sent; Email Date Received; Email Time Received; Email Subject; Custodian; File Name; Document Created Date; Document Last Modified Date; Document Last Accessed Date; File Type; Location/Source; Text Link (path to text), Native Link (path to native file);

  d.  MS Excel, MS Powerpoint, MS Access, and comparable spreadsheet, presentation, and database files, and audio and video files, shall be produced in native format to the extent they do not include privileged redactions. Complainant may make reasonable requests to receive additional documents in their native format. For documents that are produced as native files, include in the set of image (PDF or TIFF) documents a slipsheet where the native file would otherwise have been produced indicating the production number of the native file or other document and the confidentiality designation.  In addition, native files shall be produced using a name that bears the production number, for example: ABC000002.xls. Indicate any confidentiality designation in the produced filename where possible; and

  e.  for responsive information existing within a database or other compilation of data, include a field mapping explaining the type and format of data that exists in each location within the database.

7.  Documents that exist only in paper or hard-copy format should be scanned and processed according to the instructions above regarding ESI.

8.  No discovery request or part thereof shall be construed as a limitation on any other discovery request or part of a request.

10

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Documents and things sufficient to identify each version, iteration, or model of each Responsive Touch Controller from January 1, 2014 to the present.

### REQUEST FOR PRODUCTION NO. 2:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

### REQUEST FOR PRODUCTION NO. 3:

Document sufficient to show all sales and pricing information for each Responsive Touch Controller from January 1, 2014 to the present.

### REQUEST FOR PRODUCTION NO. 4:

Two samples of each Responsive Touch Controller.

### REQUEST FOR PRODUCTION NO. 5:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to sending signals, e.g. capacitive touch drive signals, to a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

### REQUEST FOR PRODUCTION NO. 6:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to receiving signals, e.g. capacitive touch signals, from a touch sensor, including but not limited to training materials,

manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to processing and analyzing signals, e.g. capacitive touch signals, received from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

## DEPOSITION TOPICS

**TOPIC NO. 1**

Each version, iteration, or model of each Responsive Touch Controller from January 1, 2014 to the present.

**TOPIC NO. 2**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 3**

Sales and pricing information for each Responsive Touch Controller from January 1, 2014 to the present.

**TOPIC NO. 4:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to sending signals, e.g. capacitive touch drive signals, to a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 5:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to receiving signals, e.g. capacitive touch signals, from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 6:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to processing and analyzing signals, e.g. capacitive touch signals, received from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**ATTACHMENT B**

# UNITED STATES INTERNATIONAL TRADE COMMISSION

## Washington, D.C.

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN TOUCH-CONTROLLED**<br>**MOBILE DEVICES, COMPUTERS, AND**<br>**COMPONENTS THEREOF** | **Inv. No. 337-TA-1162** |

**ORDER NO. 1:       PROTECTIVE ORDER**

(June 24, 2019)

WHEREAS, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5;

IT IS HEREBY ORDERED THAT:

1. Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information. The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).  Any information submitted, in pre hearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted.   Documents shall be clearly and prominently marked on their face with the legend:   "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice.   Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

(b).  The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein.  If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3.  In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than:  (i) outside counsel for parties to this investigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental

- 2 -

party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this investigation or related proceedings, or (b) in internal investigations, audits, reviews, evaluations relating to the programs, personnel, and operations of the Commission including under to 5 U.S.C. Appendix 3; and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.[1]

4.   Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission:  (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation. The letter shall also include the following acknowledgement:

> I, the undersigned, on behalf of _____, acknowledge that information submitted for purposes of this Investigation may be disclosed to and used:
>
> (i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or

---

[1] *See* Commission Administrative Order 16-01 (Nov. 7, 2015).
[2] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

5. If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 thereof.

6. (a). Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above. Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal. When any confidential business information submitted in accordance with paragraph 2 above is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER." Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof. Alternatively, he or she shall sign the agreement included as Attachment A hereto. Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

- 4 -

(b).    Submitters[3] are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

7. The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8. The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the Administrative Law Judge. When such information is made part of a pleading or is offered into the evidentiary record, the data set

---

[3] "Submitters" of confidential business information are the same as "suppliers" of confidential business information as that term is used in the context of this order. *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before the Administrative Law Judge. During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9. Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation: (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10. If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order. If prior to, or at the time of such a

- 6 -

conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation; such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may sua sponte question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11.  No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefore prior to the initial disclosure.  If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling.  If the investigation is before the Commission the matter shall be submitted to the Commission for resolution.  The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the Administrative Law Judge.  The terms of this paragraph shall be inapplicable

- 7 -

to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.   If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.   Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.   Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made.  Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy such material (including electronic media containing such information) in its possession which it regards as surplusage.

- 8 -

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.   If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.   Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.   The Secretary shall serve a copy of this order upon all parties.

Cameron Elliot
Administrative Law Judge

- 9 -

Attachment A

NONDISCLOSURE AGREEMENT FOR REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in the matter of *Certain_____*, Investigation No. 337-TA-___, except as permitted in the protective order issued in this case. I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.

Signed _____

Dated _____

Firm or affiliation _____



## UNITED STATES INTERNATIONAL TRADE COMMISSION

### WASHINGTON, DC 20436

**ADMINISTRATIVE ORDER:** 16-01

**DATE:** November 7, 2015

**SUBJECT:** Acknowledgement and Disclaimer Provisions Regarding Disclosure of Confidential Business Information or Business Proprietary Information

1. **PURPOSE:** This order establishes procedures for Commission personnel to follow in using acknowledgement and disclaimer provisions regarding the cybersecurity-related disclosure of confidential business information (CBI) or business proprietary information (BPI). The statutes governing CBI and BPI generally prohibit the Commission from disclosing CBI and BPI to persons outside certain classes of individuals for certain purposes without the consent of the information's submitter. The acknowledgement provision is designed to seek consent to permit disclosure to certain other classes of persons for other specified purposes, including cybersecurity purposes, while complying with statutory requirements. The disclaimer provision is also designed to urge the submission of nonpublic documents using encrypted methods and notify the submitter that it assumes the risk of unauthorized disclosure if a non-encrypted method is used.

2. **REFERENCES**

   a. Statutes imposing restrictions on the disclosure of CBI and BPI, including 18 U.S.C. § 1905; 19 U.S.C. §§ 1332(g), 1337(n), 1677f(b)(1)(A).

   b. Section 201.6 of the Commission's Rules of Practice and Procedures (19 C.F.R. § 201.6).

3. **ACKNOWLEDGEMENT AND DISCLAIMER PROVISIONS**

   a. The acknowledgement provision reads as follows:

   I, the undersigned, acknowledge that information submitted in response to this request for information and throughout this investigation or other proceeding may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or
(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

b.   The disclaimer provision reads as follows:

Submitters are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

c.   The acknowledgement and disclaimer provisions must be included in all protective orders issued in section 337 proceedings and in all Commission requests for CBI or BPI, including:

     i.     in questionnaires and instruction booklets, as appropriate, in import injury investigations and reviews and in industry and economic analysis proceedings; and

     ii.    in protective orders issued in section 337 proceedings, and in any other appropriate mechanisms for submission of CBI to be determined by the Commission's Administrative Law Judges.

d.   In the acknowledgement provision, the phrase "internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission" does not include statutory Commission proceedings (*viz.*, proceedings under our statutory authorities, such as 19 U.S.C. §§ 1332, 1337, 2252, and Title VII of the Tariff Act of 1930 (19 U.S.C. §§ 1303, 1516A, 1671-1677n)).

The acknowledgement provision does not permit CBI or BPI submitted in a statutory Commission proceeding to be disclosed or used in any other proceeding, with two exceptions. In the case of proceedings under Title VII of the Tariff Act of 1930, the Commission and its investigative staff may use BPI in other proceedings involving the same or similar merchandise pursuant to the authorization in the questionnaire form. In the case of proceedings under section 337 of the Tariff Act of 1930, use of CBI or BPI is permitted in related proceedings as defined in Commission Rule 210.3.

e.  In the acknowledgement provision, the phrase "cybersecurity purposes" means "detecting, preventing, analyzing, investigating, responding to, and reporting on cyber vulnerabilities, misconfigurations or inappropriate permissions on networks, or known or suspected malicious cyber activity."

f.  Protective orders in section 337 proceedings also must include a statement that third party suppliers of CBI should be given a copy of the protective order.

This order supersedes Administrative Order 97-06 and remains in effect until superseded or rescinded.

By order of the Chairman:

_____
Meredith M. Broadbent

CERTAIN TOUCH-CONTROLLED MOBILE DEVICES,
COMPUTERS, AND COMPONENTS THEREOF

INV. NO. 337-TA-1162

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **Order No. 01** has been served upon
the following parties as indicated, on _____**JUN 2 4 2019**_____.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street SW, Room 112A
Washington, DC 20436

| **FOR COMPLAINANT NEODRON LTD.** | |
|---|---|
| Asha Allam, Esq.<br>**ADDUCI, MASTRIANI & SCHAUMBERG, LLP**<br>1133 Connecticut Avenue, NW, 12th Floor<br>Washington, DC  20036 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **FOR RESPONDENT AMAZON.COM, INC.** | |
| Stefani E. Shanberg, Esq.<br>**MORRISON & FOERSTER LLP**<br>425 Market Street<br>San Francisco, CA  94105 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **FOR RESPONDENTS SAMSUNG ELECTRONICS CO., LTD & SAMSUNG ELECTRONICS AMERICA, INC.** | |
| D. Sean Trainor, Esq.<br>**O'MELVENY & MYERS LLP**<br>1625 Eye Street, NW<br>Washington, DC  20006 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |

**CERTAIN TOUCH-CONTROLLED MOBILE DEVICES,
COMPUTERS, AND COMPONENTS THEREOF**

INV. NO. 337-TA-1162

| RESPONDENT DELL TECHNOLOGIES INC. | |
|---|---|
| One Dell Way<br>Round Rock, TX 78682 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |
| **RESPONDENT HP INC.** | |
| 1501 Page Mill Road<br>Palo Alto, CA 94304 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |
| **RESPONDENTS LENOVO GROUP LTD., LEVONO (UNITED STATES) INC. & MOTOROLA MOBILITY LLC** | |
| Cecilia Sanabria, Esq.<br>**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP**<br>901 New York Avenue, NW<br>Washington, DC 20001 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |
| **RESPONDENT MICROSOFT CORPORATION** | |
| One Microsoft Way<br>Redmond, WA 98052 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

The Honorable Cameron R. Elliot
Administrative Law Judge

| | |
|---|---|
| **In the Matter of** | |
| **CERTAIN TOUCH-CONTROLLED MOBILE DEVICES, COMPUTERS, AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1162** |

## COMPLAINANT'S APPLICATION FOR ISSUANCE OF SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM*

Pursuant to 19 C.F.R. § 210.32 and Ground Rule 4.5, Complainant Neodron Ltd. ("Neodron") applies to the Administrative Law Judge ("ALJ") for issuance of a subpoena *duces tecum* and *ad testificandum* to:

> FocalTech Systems, Inc.
> 2033 Gateway Place, Suite #500
> San Jose, CA 95110
>
> <u>Registered Agent</u>:
> Naiyu Pai
> 1413 Grant Road
> Mountain View, CA 94040

The requested subpoena requires FocalTech Systems, Inc. ("FocalTech") to produce the documents, materials, and things described in Attachment A to the subpoena, consistent with the Protective Order (Attachment B), at the time and place indicated on the subpoena. The subpoena further requires FocalTech to identify and designate the most knowledgeable individual(s) to appear and give testimony as it relates to the topics described in Attachment A, at the specified location and date or at such other location and date on which Complainant and FocalTech mutually agree.

1

FocalTech is a supplier of relevant components of Respondents' accused infringing devices in this Investigation, such as touch controllers. Thus, FocalTech's documents and information related to these components, specifically their structure, function, design, operation, development, and manufacture, as well as FocalTech's relationship with Respondents, are relevant to the subject matter of this Investigation. FocalTech's website confirms that the company designs, develops, manufactures, and sells touch controllers, and is in possession, custody, or control of technical information for touch controllers incorporated into accused infringing devices. *See, e.g.,* http://www.focaltech-systems.com/chiptouch/introProduct.html.

Respondent Amazon identified FocalTech to Complainant in discovery as a supplier of touch control components in its accused infringing devices. While Complainant has attempted and will continue to attempt to obtain discovery on the touch components FocalTech supplies, Amazon has already objected to providing such third-party information.

The scope of the documents and testimony requested in Attachment A is both reasonable and narrowly tailored to relevant issues in this Investigation and, therefore, will not require an extensive production of documents or require extensive time to comply. Complainant has narrowly tailored the proposed subpoena to minimize the burden on FocalTech by only seeking information and documents related to touch controllers that have been made or sold by FocalTech and incorporated into Respondents' accused infringing devices. The information sought is highly relevant to the issues to be addressed in this Investigation, including, e.g., infringement of the accused infringing devices by way of FocalTech's components. Complainant believes that it will be unable to obtain the requested information by alternate means because Respondents object to providing any such information they have and FocalTech is in possession of this information.

Complainant will serve the subpoena, including a copy of the Protective Order, and this application by overnight delivery, if not sooner.

For the reasons set forth above, Complainant respectfully requests that the Administrative Law Judge grant this application for issuance of a subpoena *duces tecum* and *ad testificandum* and issue the attached subpoena.

Date: July 18, 2019                                      Respectfully submitted,

*/s/ Matthew D. Aichele*
Tom M. Schaumberg
Asha Allam
David H. Hollander
Evan H. Langdon
Paulina M. Starostka
**ADDUCI, MASTRIANI & SCHAUMBERG, LLP**
1133 Connecticut Avenue, NW, 12th Floor
Washington, DC 20036
Telephone:  (202) 467-6300
Facsimile:  (202) 466-2006
E-Mail:  NEO-001@adduci.com

Reza Mirzaie
Marc A. Fenster
Brian D. Ledahl
Neil A. Rubin
Kent N. Shum
Philip X. Wang
Kristopher R. Davis
Shani Williams
Amy E. Hayden
Christian W. Conkle
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474
E-Mail:  rak_neodron_itc@raklaw.com

Matthew D. Aichele
**RUSS AUGUST & KABAT**
915 E Street NW, Suite 405
Washington, DC 20004
Phone: (310) 826-7474

3

E-Mail:  rak_neodron_itc@raklaw.com

*Counsel for Complainant Neodron Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the **SUBPOENA *DUCES TECUM* TO FOCALTECH SYSTEMS, INC.** was served on the following, in the manner indicated below, this 19th day of July 2019:

FocalTech Systems, Inc.       ☒ **VIA FEDERAL EXPRESS MAIL**
2033 Gateway Place, Suite 500
San Jose, CA  95110

Registered Agent:
Naiyu Pai
1413 Grant Road
Mountain View, CA 94040

#### <u>RESPONDENT AMAZON.COM, INC.:</u>

Stefani E. Shanberg       ☒ **VIA ELECTRONIC MAIL**
Nathan B. Sabri        AmazonNeodronITC@mofo.com
Robin L. Brewer
Rachel S. Dolphin
Mathieu A. Swiderski
John S. Douglass
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105

G. Brian Busey
Veronica S. Ascarrunz
David Nathaniel Tan
**MORRISON & FOERSTER LLP**
2000 Pennsylvania Avenue, NW, Suite 6000
Washington, DC 20006

#### <u>RESPONDENT DELL TECHNOLOGIES INC.:</u>

Adam D. Swain       ☒ **VIA ELECTRONIC MAIL**
Brian D. Hill        Dell-Neodron-ITC@alston.com
**ALSTON & BIRD LLP**
950 F Street, NW
Washington, DC 20004

Michael J. Newton
**ALSTON & BIRD LLP**
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303

Brady Cox
Michael Lee
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201

**RESPONDENTS HP INC. AND MICROSOFT CORPORATION:**

Sean C. Cunningham                  ☒ **VIA ELECTRONIC MAIL**
Erin P. Gibson                          DLA1162@us.dlapiper.com
Robert Williams
David R. Knudson
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101

Brian Erickson
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701

James Heintz
**DLA PIPER LLP (US)**
One Fountain Square
11911 Freedom Drive, Suite 300
Reston, VA 20190

Erik Fuehrer
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303

Stephanie Lim
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606

**RESPONDENTS LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., AND MOTOROLA MOBILITY LLC:**

Lionel M. Lavenue                   ☒ **VIA ELECTRONIC MAIL**
Cecilia Sanabria                        Lenovo-Motorola-1162-ITC@finnegan.com
Smith R. Brittingham IV
Marcus A.R. Childress
Jorge F. Gonzalez
Amanda E. Stephenson

2

**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP**
901 New York Avenue, NW
Washington, DC 20001

**RESPONDENT SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD.:**

Ryan K. Yagura                        ☒  **VIA ELECTRONIC MAIL**
Nicholas J. Whilt                          NeodronSamsungOMM@omm.com
Brian Cook
Ben Haber
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, CA 90071

John Kappos
Bo Moon
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660

D. Sean Trainor
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006

Darin Snyder
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111

*/s/ Irina Komarov, Paralegal*
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.

# EXHIBIT B



**RUSS AUGUST & KABAT**
LAWYERS

12424 Wilshire Blvd.

Twelfth Floor

Los Angeles

California

90025

Tel 310.826.7474

Fax 310.826.6991

www.raklaw.com

Matthew D. Aichele
maichele@raklaw.com

July 19, 2019

## VIA FEDEX OVERNIGHT DELIVERY

Elan Information Technology Group
20647 Celeste Circle
Cupertino, CA  95014

**Re:**    *In the Matter of Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*, Inv. No. 337-TA-1162

Dear Sir/Madam:

Enclosed please find a Subpoena *Duces Tecum* and *Ad Testificandum* to Elan Information Technology Group ("Elan") that was issued by the Administrative Law Judge in the above-referenced Investigation, which includes as Attachment B Order No. 1, the Protective Order in this Investigation. Please note that any confidential documents produced by Elan and labeled with the heading "Confidential Business Information Subject to Protective Order" will be maintained in accordance with Order No. 1.

Also enclosed is the Subpoena Application that was submitted to the ALJ, which sets forth the relevance of the documents requested in Attachment A of the subpoena.

If you have any questions, please do not hesitate to contact me at (202) 664-0623 or maichele@raklaw.com.

Very truly yours,

Russ, August & Kabat

*/s/ Matthew D. Aichele*
Matthew D. Aichele

Enclosures

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

| |
|---|
| **In the Matter of** |
| **CERTAIN TOUCH-CONTROLLED**<br>**MOBILE DEVICES, COMPUTERS,**<br>**AND COMPONENTS THEREOF** |

**Inv. No. 337-TA-1162**

**SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM***

**TO:**

**Elan Information Technology Group**
**20647 Celeste Cir.**
**Cupertino, CA 95014**

**TAKE NOTICE:** By authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(C)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by Complainant Neodron Ltd. ("Neodron"),

**YOU ARE HEREBY ORDERED** to produce at Russ, August & Kabat, 12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025, on August 6, 2019, or at such other time and place agreed upon, all of the documents and things in your possession, custody, or control, which are listed and described in Attachment A. Such production will be for the purpose of inspection and copying, as desired.

If production of any document listed and described in Attachment A is withheld on the basis of a claim of privilege, each withheld document should be separately identified in a privileged document list. The privileged document list must identify each document separately, specifying for each document at least: (1) the date; (2) author(s)/sender(s); (3) recipient(s), including copy recipients; and (4) general subject matter of the document. The sender(s) or the recipient(s) shall be identified by position and entity (corporation or firm, *etc.*) with which they are employed or

associated. If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified. The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

If any of the documents or things listed and described in Attachment A are considered "confidential business information," as that term is defined in Protective Order (Order No. 1) attached hereto as Attachment B, such documents or things should be produced subject to the terms and provisions of the Protective Order.

**YOU ARE FURTHER HEREBY ORDERED** to present yourself for purposes of your deposition upon oral examination on August 23, 2019, at Russ, August & Kabat, 12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025, or at such other time and place agreed upon, concerning the subject matter set forth in Attachment A hereto.

This deposition will be taken before a Notary Public or other person authorized to administer oaths and will continue from day to day until completed. If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in the Protective Order attached hereto, such documents or things shall be produced subject to the terms and provisions of the Protective Order.

Any motion to limit or quash this subpoena shall be filed within **ten (10) days** after the receipt thereof. At the time of filing of any motion concerning this subpoena, two courtesy copies shall be served concurrently on the Administrative Law Judge at his office.

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set his hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this 4 day of _____, 2019.


Cameron Elliot
Administrative Law Judge
United States International Trade Commission


Presiding in *Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*, Inv. No. 337-TA-1162

3

## ATTACHMENT A

## DEFINITIONS

1.      The term "Commission" or "ITC" refers to the United States International Trade Commission.

2.      The term "Complainant" means and includes Complainant Neodron Ltd.

3.      The term "Investigation" means the above-captioned investigation, *Certain Touch-Controlled Mobile Devices, Computers, and Components*, United States International Trade Commission, Investigation No. 337-TA-1162.

4.      The term "Complaint" means the Complaint under Section 337 of the Tariff Act of 1930, as amended, filed by Complainant with the Secretary's Office of the United States International Trade Commission on May 22, 2019, as well as any supplement to or amended version of that Complaint, including the First Amended Complaint filed on May 23, 2019.

5.      The term "Amazon" means Amazon.com, Inc.

6.      The term "Dell" means Dell Technologies Inc.

7.      The term "HP" means HP Inc.

8.      The term "Lenovo" means Lenovo Group Ltd. and Lenovo (United States) Inc.

9.      The term "Microsoft" means Microsoft Corporation.

10.     The term "Motorola" means Motorola Mobility LLC.

11.     The term "Samsung" means Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

12.     The term "Respondents" means Amazon, Dell, HP, Lenovo, Microsoft, Motorola, and Samsung, jointly and severally.

13.     The terms "Elan," "you," and "your" mean and include, individually and collectively, Elan Information Technology Group, and all of its U.S. and foreign predecessors, parents, subsidiaries, sister companies, affiliates, divisions, licensees, franchisees, assigns, or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, salespersons, sales representatives, employees of such entities, and representatives and any person or entity acting on its behalf.

14.     The term "Patent Office" means the United States Patent and Trademark Office.

15.     The term "'173 Patent" means U.S. Patent No. 8,432,173.

16.     The term "'910 Patent" means U.S. Patent No. 8,791,910.

17.     The term "'790 Patent" means U.S. Patent No. 9,024,790.

18.     The term "'580 Patent" means U.S. Patent No. 9,372,580.

19.     The term "Asserted Patent(s)" means the '173 Patent, the '910 Patent, the '790 Patent, and the '580 Patent, individually and/or collectively.

20.     The term "Asserted Claim(s)" means the claims of the Asserted Patents asserted in the Complaint against Respondent.

21.     The term "Accused Product(s)" means and includes each model of touch-controlled mobile devices, including smartphone and tablet devices, computers, including notebook and laptop computers, and associated components thereof imported into the United States, sold for importation within the United States, and/or sold after importation into the United States by Respondents, for Respondents, on Respondents' behalf, or through a website owned, operated, and/or controlled by Respondents, including but not limited to the products and devices identified in the Complaint, and all versions and variations thereof, including models, versions, and

variations that may be imported or sold by or for Respondents in the future and during the course of this Investigation.

22.    The term "Responsive Touch Controller" means and includes each model of touch controller made or sold by you that is included in any Accused Product.

23.    The term "component" means a constituent part of a system, including but not limited to capacitive touch sensors, touchpads, touch controllers, touchscreens, and any other means for recognizing and processing touch input signals.

24.    The terms "document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined by Commission Rule 210.30 and Federal Rule of Civil Procedure 34, and include all things within the meaning and scope of that term as used in the Commission's Rules of Practice and Procedure, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, including without limitation the following items, whether printed, recorded, microfilmed, reproduced by any process, written, produced by hand, or recorded in any other way, and whether or not claimed to be privileged, confidential, or personal: letters; correspondence; memoranda; notes; reports; records; agreements; working papers; communications (including intradepartmental and interdepartmental communications); summaries or records of personal conversations; calendars; diaries; forecasts; statistical statements; graphs; laboratory or research reports and notebooks; charts; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigations; opinions or reports of consultants; patents and patent application materials; patent appraisals; printed publications; trademark applications, certificates of registration, opinions of counsel; memoranda of agreements; assignments; licenses; reports of or summaries of either negotiations within or without

3

the corporation or preparations for such; bulletins; material and manufacturing specifications; material packaging; manufacturing logs; equipment specifications and operating information; product packaging; designs; instructions; advertisements; literature; work assignments; memoranda of conversations; notes; notebooks; drafts; data sheets; worksheets; contracts; minute books of account; orders; invoices; statements; bills; checks; vouchers; photographs; drawings; charts; catalogs; brochures; computer files; computer discs; articles; manuals; pamphlets; advertisements; circulars; press releases; drafts of any documents; books; instruments; accounts; bills of sale; tapes; electronic communications including but not limited to e-mails; telegraphic communications; original or preliminary notes; and all other materials of any tangible medium of expression. Any comment or notation appearing on any document, and not a part of the original text, is to be considered a separate "document."

26. The term "thing(s)" has the broadest meaning allowable under Commission Rule 210.30 and Federal Rules of Civil Procedure 34. This meaning encompasses any tangible object of any kind and nature other than a document, including without limitation prototypes, models, and physical specimens thereof.

26. The term "person(s)" means any natural person, individual, group, or entity. The acts of a person shall include the acts of the person's directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the person's behalf.

27. The term "communication(s)" means any oral, written, or other contact between two or more persons or entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including but not limited to letters, memoranda, telegrams, telefaxes, telecopies, e-mails, text messages, fact-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

28.     The term "identify" or "identification," when used with respect to any natural person, means that the following information shall be provided:  the person's full name; last known home address; last known business address and telephone number; last known e-mail address; last known title or occupation; and last known employer.

29.     The term "identify" or "identification," when used with respect to any person other than a natural person, means that the following information shall be provided:  the person's name; the place of incorporation or organization; the principal place of business; and the nature of the business conducted by that person.

30.     The term "identify" or "identification," when used with respect to a document, means that the Bates number(s) or other litigation document control number(s) for that document shall be provided, or, if no such number exists, other information sufficient to locate that document, including but not limited to the following:  the date appearing on such document or, if no date appears on it, the approximate date the document was prepared; the identifying code, file number, title, or label; a general description of the document (e.g., letter, memorandum, drawing); the title or heading; the number of pages included in the document; the name of each person who signed or authorized the document; the name of each addressee; the name of each person having possession, custody, or control of the document; if the document existed at one time but does not presently exist, the reason(s) why it no longer exists and the identity of the last person having custody of it; and, if the document is in a foreign language, whether an English translation (partial or complete) of the document exists.

31.     The terms "entity" and "entities" mean any legal person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic person, business unit, or

collective organization, and any legal, governmental, organizational, or political subdivision thereof.

32.    The term "information" means information in any form, including but not limited to documentary, electronic, graphical, or tabular, and communicated by any means, including but not limited to orally, in writing, or via electronic communication.

33.    The term "relating to," "related to," "relate to," or "concerning," when referring to any given subject matter, means without limitation any information, document, or thing that in whole or in part and directly or indirectly relates to, concerns, regards, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to the particular subject matter identified.

34.    The term "including" means "including without limitation" and "including but not limited to."

35.    The terms "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each request in which they are used.

36.    Except where the context does not permit, the terms "each" and "any" shall mean any and all.

37.    The term "date" shall mean the exact date, if known, or the closest approximation to the exact date as can be specified, including without limitation, the year, month, week in a month, or part of a month.

38.    All other words are given their plain and ordinary meaning.

39.     If you find the meaning of any term in these Requests unclear, then you shall construe the term so as to render responsive any information, document, thing, or communication that might otherwise be rendered non-responsive.

40.     Any word written in the singular shall be construed as plural or vice versa in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope. The past tense as used in the below requests includes the present tense where the meaning is not distorted, and the verb form of a noun or pronoun may be used, as appropriate in particular context.

## **INSTRUCTIONS**

The following instructions are applicable to terms in each discovery request unless otherwise explicitly stated:

1.     In producing the documents and things requested, you shall furnish all documents and things known or available to you within your possession, custody, or control, wherever located (including outside the United States), regardless of whether such documents or things are possessed directly by you or by any of your agents, officers, employees, attorneys, representatives, or those acting on your behalf.

2.     If any documents responsive to these requests are withheld from production under a claim of privilege or other immunity from discovery, You shall provide a schedule of such withheld documents with enough detail for Complainant to assess the claim, including at least the following:  (a) the basis on which the privilege is claimed; (b) the names and titles of the author(s) of the document and all other persons participating in the preparation of the document; (c) the name of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed; (d) the date of the document; (e) a description of any accompanying material

7

transmitted with or attached to such document; (f) the number of pages in such document; and (g) whether any business or non-legal matter is contained or discussed in such document.

3.      If the attorney-client privilege, work product immunity, or any other applicable privilege or immunity is asserted in response to any discovery request, you must expressly make the claim when responding. Absent agreement among the Parties, you must also produce, within ten calendar days of the date on which responses to these requests are due, a withheld document log that describes the nature of the information not produced or disclosed in a manner that will enable Complainant to assess the claim. The withheld document log must separately identify each withheld document, communication, or item, and specify the following for each entry in accordance with 19 C.F.R. § 210.27(e)(1) (absent agreement under 19 C.F.R. § 210.27(e)(3) and the Administrative Law Judge's Ground Rules):

      a.      The date the information was created or communicated; the author(s) or speaker(s); all recipients; the employer and title of each author, speaker, or recipient, including whether that person is an attorney or patent agent; the general subject matter of the information; and the type of privilege or protection claimed; and

      b.      To the extent the claim of attorney-client privilege or work product immunity is not being asserted as to the entirety of a document, Respondent shall produce in redacted form that portion of the document not covered by such claim of privilege or immunity.

4.      If, after exercising due diligence, you are unable to determine the existence of any documents or things falling within a discovery request requesting identification of documents or things, you shall so state in your written response.

5.      All documents produced in response to a discovery request shall be the original or true complete copies of the original. If an English translation of any document produced exists, the English translation shall be produced.

6.      "Electronically stored information" or "ESI" must be produced in the following format, barring mutual agreement by the parties:

      a.      Single-page group IV TIFFs in at least 600 dpi for black and white images, or .JPG for images produced in color, with images produced using a unique file name that will be the production number of that page (e.g., ABC000001.TIFF). The production number shall appear on the face of the image;

      b.      Searchable text files at the document level (one text file for each document, rather than one text file for each page of a document) for each document bearing the name of the beginning production number for each document (text of native files to be extracted directly from native files where possible; OCR for paper documents), productions that contain foreign language documents shall be Unicode compliant, document level text files with a .txt extension will be provided where available.  The text file name will correspond to the beginning production number of the image or native file.  A field will be included in the DAT with the path to the corresponding text file;

      c.      Database load files and cross reference files, e.g., Concordance default delimited file (metadata) and an Opticon-delimited file (image reference files), and including the following fields (to the extent the metadata is available):  Beg Bates No.; End Bates No.; Bates Range; Bates Parentid; Attach Begin; Attach End; Page Count; From/Author; To/Recipient(s); CC; Bcc; Email Date Sent; Email Time

Sent; Email Date Received; Email Time Received; Email Subject; Custodian; File Name; Document Created Date; Document Last Modified Date; Document Last Accessed Date; File Type; Location/Source; Text Link (path to text), Native Link (path to native file);

d.      MS Excel, MS Powerpoint, MS Access, and comparable spreadsheet, presentation, and database files, and audio and video files, shall be produced in native format to the extent they do not include privileged redactions. Complainant may make reasonable requests to receive additional documents in their native format. For documents that are produced as native files, include in the set of image (PDF or TIFF) documents a slipsheet where the native file would otherwise have been produced indicating the production number of the native file or other document and the confidentiality designation.  In addition, native files shall be produced using a name that bears the production number, for example: ABC000002.xls. Indicate any confidentiality designation in the produced filename where possible; and

e.      for responsive information existing within a database or other compilation of data, include a field mapping explaining the type and format of data that exists in each location within the database.

7.      Documents that exist only in paper or hard-copy format should be scanned and processed according to the instructions above regarding ESI.

8.      No discovery request or part thereof shall be construed as a limitation on any other discovery request or part of a request.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Documents and things sufficient to identify each version, iteration, or model of each Responsive Touch Controller from January 1, 2014 to the present.

### REQUEST FOR PRODUCTION NO. 2:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

### REQUEST FOR PRODUCTION NO. 3:

Document sufficient to show all sales and pricing information for each Responsive Touch Controller from January 1, 2014 to the present.

### REQUEST FOR PRODUCTION NO. 4:

Two samples of each Responsive Touch Controller.

### REQUEST FOR PRODUCTION NO. 5:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to sending signals, e.g. capacitive touch drive signals, to a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

### REQUEST FOR PRODUCTION NO. 6:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to receiving signals, e.g. capacitive touch signals, from a touch sensor, including but not limited to training materials,

11

manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to processing and analyzing signals, e.g. capacitive touch signals, received from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

## DEPOSITION TOPICS

**TOPIC NO. 1**

Each version, iteration, or model of each Responsive Touch Controller from January 1, 2014 to the present.

**TOPIC NO. 2**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 3**

Sales and pricing information for each Responsive Touch Controller from January 1, 2014 to the present.

**TOPIC NO. 4:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to sending signals, e.g. capacitive touch drive signals, to a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 5:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to receiving signals, e.g. capacitive touch signals, from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 6:**

13

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to processing and analyzing signals, e.g. capacitive touch signals, received from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**ATTACHMENT B**

# UNITED STATES INTERNATIONAL TRADE COMMISSION

## Washington, D.C.

| | |
|---|---|
| **In the Matter of** | |
| **CERTAIN TOUCH-CONTROLLED MOBILE DEVICES, COMPUTERS, AND COMPONENTS THEREOF** | **Inv. No.  337-TA-1162** |

**ORDER NO. 1:**        **PROTECTIVE ORDER**

(June 24, 2019)

WHEREAS, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5;

IT IS HEREBY ORDERED THAT:

1. Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information.  The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).  Any information submitted, in pre hearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted.  Documents shall be clearly and prominently marked on their face with the legend:   "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice.  Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

(b).  The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein.  If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3. In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than:  (i) outside counsel for parties to this investigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental

- 2 -

party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this investigation or related proceedings, or (b) in internal investigations, audits, reviews, evaluations relating to the programs, personnel, and operations of the Commission including under to 5 U.S.C. Appendix 3; and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.[1]

4.   Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission:  (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation. The letter shall also include the following acknowledgement:

> I, the undersigned, on behalf of _____, acknowledge that information submitted for purposes of this Investigation may be disclosed to and used:
>
> (i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or

---

[1] *See* Commission Administrative Order 16-01 (Nov. 7, 2015).
[2] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

- 3 -

(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

5.  If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 thereof.

6.  (a). Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above.  Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal.  When any confidential business information submitted in accordance with paragraph 2 above is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER."  Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof.  Alternatively, he or she shall sign the agreement included as Attachment A hereto. Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

- 4 -

(b).    Submitters[3] are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

7. The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8. The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the Administrative Law Judge. When such information is made part of a pleading or is offered into the evidentiary record, the data set

---

[3] "Submitters" of confidential business information are the same as "suppliers" of confidential business information as that term is used in the context of this order. *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before the Administrative Law Judge. During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9. Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation: (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10. If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order. If prior to, or at the time of such a

- 6 -

conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation; such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may sua sponte question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11. No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefore prior to the initial disclosure.  If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling.  If the investigation is before the Commission the matter shall be submitted to the Commission for resolution.  The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the Administrative Law Judge.  The terms of this paragraph shall be inapplicable

- 7 -

to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.   If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.   Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.   Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made.   Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy such material (including electronic media containing such information) in its possession which it regards as surplusage.

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.   If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.   Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.   The Secretary shall serve a copy of this order upon all parties.


Cameron Elliot
Administrative Law Judge

- 9 -

**Attachment A**

NONDISCLOSURE AGREEMENT FOR REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in the matter of *Certain_____*, Investigation No. 337-TA-___, except as permitted in the protective order issued in this case. I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.

Signed _____

Dated _____

Firm or affiliation _____

- 10 -



## UNITED STATES INTERNATIONAL TRADE COMMISSION

### WASHINGTON, DC 20436

**ADMINISTRATIVE ORDER:** 16-01

**DATE:** November 7, 2015

**SUBJECT:** Acknowledgement and Disclaimer Provisions Regarding Disclosure of Confidential Business Information or Business Proprietary Information

1. **PURPOSE:** This order establishes procedures for Commission personnel to follow in using acknowledgement and disclaimer provisions regarding the cybersecurity-related disclosure of confidential business information (CBI) or business proprietary information (BPI). The statutes governing CBI and BPI generally prohibit the Commission from disclosing CBI and BPI to persons outside certain classes of individuals for certain purposes without the consent of the information's submitter. The acknowledgement provision is designed to seek consent to permit disclosure to certain other classes of persons for other specified purposes, including cybersecurity purposes, while complying with statutory requirements. The disclaimer provision is also designed to urge the submission of nonpublic documents using encrypted methods and notify the submitter that it assumes the risk of unauthorized disclosure if a non-encrypted method is used.

2. **REFERENCES**

   a. Statutes imposing restrictions on the disclosure of CBI and BPI, including 18 U.S.C. § 1905; 19 U.S.C. §§ 1332(g), 1337(n), 1677f(b)(1)(A).

   b. Section 201.6 of the Commission's Rules of Practice and Procedures (19 C.F.R. § 201.6).

3. **ACKNOWLEDGEMENT AND DISCLAIMER PROVISIONS**

   a. The acknowledgement provision reads as follows:

   I, the undersigned, acknowledge that information submitted in response to this request for information and throughout this investigation or other proceeding may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or
(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

b.  The disclaimer provision reads as follows:

Submitters are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

c.  The acknowledgement and disclaimer provisions must be included in all protective orders issued in section 337 proceedings and in all Commission requests for CBI or BPI, including:

    i.  in questionnaires and instruction booklets, as appropriate, in import injury investigations and reviews and in industry and economic analysis proceedings; and

    ii.  in protective orders issued in section 337 proceedings, and in any other appropriate mechanisms for submission of CBI to be determined by the Commission's Administrative Law Judges.

d.  In the acknowledgement provision, the phrase "internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission" does not include statutory Commission proceedings (*viz.*, proceedings under our statutory authorities, such as 19 U.S.C. §§ 1332, 1337, 2252, and Title VII of the Tariff Act of 1930 (19 U.S.C. §§ 1303, 1516A, 1671-1677n)).

The acknowledgement provision does not permit CBI or BPI submitted in a statutory Commission proceeding to be disclosed or used in any other proceeding, with two exceptions. In the case of proceedings under Title VII of the Tariff Act of 1930, the Commission and its investigative staff may use BPI in other proceedings involving the same or similar merchandise pursuant to the authorization in the questionnaire form. In the case of proceedings under section 337 of the Tariff Act of 1930, use of CBI or BPI is permitted in related proceedings as defined in Commission Rule 210.3.

  e. In the acknowledgement provision, the phrase "cybersecurity purposes" means "detecting, preventing, analyzing, investigating, responding to, and reporting on cyber vulnerabilities, misconfigurations or inappropriate permissions on networks, or known or suspected malicious cyber activity."

  f. Protective orders in section 337 proceedings also must include a statement that third party suppliers of CBI should be given a copy of the protective order.

This order supersedes Administrative Order 97-06 and remains in effect until superseded or rescinded.

By order of the Chairman:

*Meredith M. Broadbent*

_____

Meredith M. Broadbent

**CERTAIN TOUCH-CONTROLLED MOBILE DEVICES,**
**COMPUTERS, AND COMPONENTS THEREOF**

**INV. NO. 337-TA-1162**

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **Order No. 01** has been served upon the following parties as indicated, on ____**JUN 2 4 2019**_____.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street SW, Room 112A
Washington, DC 20436

| **FOR COMPLAINANT NEODRON LTD.** | |
|---|---|
| Asha Allam, Esq.<br>**ADDUCI, MASTRIANI & SCHAUMBERG, LLP**<br>1133 Connecticut Avenue, NW, 12th Floor<br>Washington, DC 20036 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **FOR RESPONDENT AMAZON.COM, INC.** | |
| Stefani E. Shanberg, Esq.<br>**MORRISON & FOERSTER LLP**<br>425 Market Street<br>San Francisco, CA 94105 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **FOR RESPONDENTS SAMSUNG ELECTRONICS CO., LTD & SAMSUNG ELECTRONICS AMERICA, INC.** | |
| D. Sean Trainor, Esq.<br>**O'MELVENY & MYERS LLP**<br>1625 Eye Street, NW<br>Washington, DC 20006 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |

**CERTAIN TOUCH-CONTROLLED MOBILE DEVICES,
COMPUTERS, AND COMPONENTS THEREOF**

INV. NO. 337-TA-1162

| | |
|---|---|
| **RESPONDENT DELL TECHNOLOGIES INC.** | |
| One Dell Way<br>Round Rock, TX  78682 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(√) Via First Class Mail<br>( ) Other: _____ |
| **RESPONDENT HP INC.** | |
| 1501 Page Mill Road<br>Palo Alto, CA  94304 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(√) Via First Class Mail<br>( ) Other: _____ |
| **RESPONDENTS LENOVO GROUP LTD., LEVONO (UNITED STATES) INC. & MOTOROLA MOBILITY LLC** | |
| Cecilia Sanabria, Esq.<br>**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP**<br>901 New York Avenue, NW<br>Washington, DC  20001 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(√) Via First Class Mail<br>( ) Other: _____ |
| **RESPONDENT MICROSOFT CORPORATION** | |
| One Microsoft Way<br>Redmond, WA 98052 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(√) Via First Class Mail<br>( ) Other: _____ |

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**The Honorable Cameron R. Elliot**
**Administrative Law Judge**

| In the Matter of | |
| --- | --- |
| **CERTAIN TOUCH-CONTROLLED MOBILE DEVICES, COMPUTERS, AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1162** |

**COMPLAINANT'S APPLICATION FOR ISSUANCE OF**
**SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM***

Pursuant to 19 C.F.R. § 210.32 and Ground Rule 4.5, Complainant Neodron Ltd. ("Neodron") applies to the Administrative Law Judge ("ALJ") for issuance of a subpoena *duces tecum* and *ad testificandum* to:

**Elan Information Technology Group**
**20647 Celeste Cir.**
**Cupertino, CA 95014**

The requested subpoena requires Elan Information Technology Group ("Elan") to produce the documents, materials, and things described in Attachment A to the subpoena, consistent with the Protective Order (Attachment B), at the time and place indicated on the subpoena. The subpoena further requires Elan to identify and designate the most knowledgeable individual(s) to appear and give testimony as it relates to the topics described in Attachment A, at the specified location and date or at such other location and date on which Complainant and Elan mutually agree.

Elan is a supplier of relevant components of Respondents' accused infringing devices in this Investigation, such as touch controllers. Thus, Elan's documents and information related to these components, specifically their structure, function, design, operation, development, and

1

manufacture, as well as Elan's relationship with Respondents, are relevant to the subject matter of this Investigation. Elan's website confirms that the company designs, develops, manufactures, and sells touch controllers, and is in possession, custody, or control of technical information for touch controllers incorporated into accused infringing devices. *See, e.g.,* http://www.emc.com.tw/eng/index.asp; http://www.emc.com.tw/eng/8bit_tphni_ds.asp; http://www.emc.com.tw/eng/tech_8bit.asp; http://www.emc.com.tw/eng/about_elan_4.asp.

Respondents HP and Samsung identified Elan to Complainant in discovery as a supplier of touch control components in its accused infringing devices. While Complainant has attempted and will continue to attempt to obtain discovery on the touch components Elan supplies, HP and Samsung have already objected to providing such third-party information.

The scope of the documents and testimony requested in Attachment A is both reasonable and narrowly tailored to relevant issues in this Investigation and, therefore, will not require an extensive production of documents or require extensive time to comply. Complainant has narrowly tailored the proposed subpoena to minimize the burden on Elan by only seeking information and documents related to touch controllers that have been made or sold by Elan and incorporated into Respondents' accused infringing devices. The information sought is highly relevant to the issues to be addressed in this Investigation, including, e.g., infringement of the accused infringing devices by way of Elan's components. Complainant believes that it will be unable to obtain the requested information by alternate means because Respondents object to providing any such information they have and Elan is in possession of this information. Complainant will serve the subpoena, including a copy of the Protective Order, and this application by overnight delivery, if not sooner.

For the reasons set forth above, Complainant respectfully requests that the Administrative

Law Judge grant this application for issuance of a subpoena *duces tecum* and *ad testificandum* and

issue the attached subpoena.

Date: July 18, 2019

Respectfully submitted,

/s/ Matthew D. Aichele
Tom M. Schaumberg
Asha Allam
David H. Hollander
Evan H. Langdon
Paulina M. Starostka
ADDUCI, MASTRIANI & SCHAUMBERG, LLP
1133 Connecticut Avenue, NW, 12th Floor
Washington, DC 20036
Telephone:  (202) 467-6300
Facsimile:  (202) 466-2006
E-Mail:  NEO-001@adduci.com

Reza Mirzaie
Marc A. Fenster
Brian D. Ledahl
Neil A. Rubin
Kent N. Shum
Philip X. Wang
Kristopher R. Davis
Shani Williams
Amy E. Hayden
Christian W. Conkle
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474
E-Mail:  rak_neodron_itc@raklaw.com

Matthew D. Aichele
RUSS AUGUST & KABAT
915 E Street NW, Suite 405
Washington, DC 20004
Phone: (310) 826-7474
E-Mail:  rak_neodron_itc@raklaw.com

*Counsel for Complainant Neodron Ltd.*

3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the **SUBPOENA *DUCES TECUM* TO ELAN INFORMATION TECHNOLOGY GROUP** was served on the following, in the manner indicated below, this 19th day of July 2019:

Elan Information Technology Group      ☒ **VIA FEDERAL EXPRESS MAIL**
20647 Celeste Circle
Cupertino, CA  95014

**RESPONDENT AMAZON.COM, INC.:**

Stefani E. Shanberg      ☒ **VIA ELECTRONIC MAIL**
Nathan B. Sabri                       AmazonNeodronITC@mofo.com
Robin L. Brewer
Rachel S. Dolphin
Mathieu A. Swiderski
John S. Douglass
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105

G. Brian Busey
Veronica S. Ascarrunz
David Nathaniel Tan
**MORRISON & FOERSTER LLP**
2000 Pennsylvania Avenue, NW, Suite 6000
Washington, DC 20006

**RESPONDENT DELL TECHNOLOGIES INC.:**

Adam D. Swain      ☒ **VIA ELECTRONIC MAIL**
Brian D. Hill                        Dell-Neodron-ITC@alston.com
**ALSTON & BIRD LLP**
950 F Street, NW
Washington, DC 20004

Michael J. Newton
**ALSTON & BIRD LLP**
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303

Brady Cox
Michael Lee
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201

**RESPONDENTS HP INC. AND MICROSOFT CORPORATION:**

Sean C. Cunningham
Erin P. Gibson
Robert Williams
David R. Knudson
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101

Brian Erickson
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701

James Heintz
**DLA PIPER LLP (US)**
One Fountain Square
11911 Freedom Drive, Suite 300
Reston, VA 20190

Erik Fuehrer
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303

Stephanie Lim
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606

☒ **VIA ELECTRONIC MAIL**
DLA1162@us.dlapiper.com

**RESPONDENTS LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., AND MOTOROLA MOBILITY LLC:**

Lionel M. Lavenue
Cecilia Sanabria
Smith R. Brittingham IV
Marcus A.R. Childress
Jorge F. Gonzalez
Amanda E. Stephenson
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP**
901 New York Avenue, NW
Washington, DC 20001

☒ **VIA ELECTRONIC MAIL**
Lenovo-Motorola-1162-ITC@finnegan.com

**RESPONDENT SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD.:**

Ryan K. Yagura
Nicholas J. Whilt
Brian Cook
Ben Haber
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, CA 90071

John Kappos
Bo Moon
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660

D. Sean Trainor
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006

Darin Snyder
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111

⊠ **VIA ELECTRONIC MAIL**
   NeodronSamsungOMM@omm.com

*/s/ Irina Komarov, Paralegal*
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.

3

# EXHIBIT C



**RUSS AUGUST & KABAT**
LAWYERS

12424 Wilshire Blvd.

Twelfth Floor

Los Angeles

California

90025

Tel 310.826.7474

Fax 310.826.6991

www.raklaw.com

Matthew D. Aichele
maichele@raklaw.com

July 19, 2019

**VIA FEDEX OVERNIGHT DELIVERY**

Synaptics, Inc.
1251 McKay Drive
San Jose, CA  95131

Registered Agent:
CT Corporation System
111 Eight Avenue, 13th Floor
New York, NY 10011

CT Corporation System
818 Seventh Street, Suite 930
Los Angeles, CA 90017

Re:     *In the Matter of Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*, Inv. No. 337-TA-1162

Dear Sir/Madam:

Enclosed please find a Subpoena *Duces Tecum* and *Ad Testificandum* to Synaptics, Inc. ("Synaptics") that was issued by the Administrative Law Judge in the above-referenced Investigation, which includes as Attachment B Order No. 1, the Protective Order in this Investigation. Please note that any confidential documents produced by Synaptics and labeled with the heading "Confidential Business Information Subject to Protective Order" will be maintained in accordance with Order No. 1.

Also enclosed is the Subpoena Application that was submitted to the ALJ, which sets forth the relevance of the documents requested in Attachment A of the subpoena.

If you have any questions, please do not hesitate to contact me at (202) 664-0623 or maichele@raklaw.com.

Very truly yours,

Russ, August & Kabat

*/s/ Matthew D. Aichele*
Matthew D. Aichele

Enclosures

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

| In the Matter of | |
|---|---|
| **CERTAIN TOUCH-CONTROLLED MOBILE DEVICES, COMPUTERS, AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1162** |

<u>**SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM***</u>

**TO:**

> **Synaptics Inc.**
> **1251 McKay Dr.**
> **San Jose, CA  95131**
>
> <u>**Registered Agent**</u>**:**
> **CT Corporation System**
> **111 Eight Ave., 13th Floor**
> **New York, NY 10011**
>
> **818 Seventh St., Ste. 930**
> **Los Angeles, CA 90017**

**TAKE NOTICE:**  By authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(C)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by Complainant Neodron Ltd.  ("Neodron"),

**YOU ARE HEREBY ORDERED** to produce at Russ, August & Kabat, 12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025, on August 6, 2019, or at such other time and place agreed upon, all of the documents and things in your possession, custody, or control, which are listed and described in Attachment A. Such production will be for the purpose of inspection and copying, as desired.

If production of any document listed and described in Attachment A is withheld on the basis of a claim of privilege, each withheld document should be separately identified in a privileged

document list. The privileged document list must identify each document separately, specifying for each document at least: (1) the date; (2) author(s)/sender(s); (3) recipient(s), including copy recipients; and (4) general subject matter of the document. The sender(s) or the recipient(s) shall be identified by position and entity (corporation or firm, *etc.*) with which they are employed or associated. If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified. The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

If any of the documents or things listed and described in Attachment A are considered "confidential business information," as that term is defined in Protective Order (Order No. 1) attached hereto as Attachment B, such documents or things should be produced subject to the terms and provisions of the Protective Order.

**YOU ARE FURTHER HEREBY ORDERED** to present yourself for purposes of your deposition upon oral examination on August 23, 2019, at Russ, August & Kabat, 12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025, or at such other time and place agreed upon, concerning the subject matter set forth in Attachment A hereto.

This deposition will be taken before a Notary Public or other person authorized to administer oaths and will continue from day to day until completed. If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in the Protective Order attached hereto, such documents or things shall be produced subject to the terms and provisions of the Protective Order.

2

Any motion to limit or quash this subpoena shall be filed within **ten (10) days** after the receipt thereof. At the time of filing of any motion concerning this subpoena, two courtesy copies shall be served concurrently on the Administrative Law Judge at his office.

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set his hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this 19 day of _____, 2019.

Cameron Elliot
Administrative Law Judge
United States International Trade Commission

Presiding in *Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*, Inv. No. 337-TA-1162

3

**ATTACHMENT A**

**DEFINITIONS**

1.      The term "Commission" or "ITC" refers to the United States International Trade Commission.

2.      The term "Complainant" means and includes Complainant Neodron Ltd.

3.      The term "Investigation" means the above-captioned investigation, *Certain Touch-Controlled Mobile Devices, Computers, and Components*, United States International Trade Commission, Investigation No. 337-TA-1162.

4.      The term "Complaint" means the Complaint under Section 337 of the Tariff Act of 1930, as amended, filed by Complainant with the Secretary's Office of the United States International Trade Commission on May 22, 2019, as well as any supplement to or amended version of that Complaint, including the First Amended Complaint filed on May 23, 2019.

5.      The term "Amazon" means Amazon.com, Inc.

6.      The term "Dell" means Dell Technologies Inc.

7.      The term "HP" means HP Inc.

8.      The term "Lenovo" means Lenovo Group Ltd. and Lenovo (United States) Inc.

9.      The term "Microsoft" means Microsoft Corporation.

10.     The term "Motorola" means Motorola Mobility LLC.

11.     The term "Samsung" means Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

12.     The term "Respondents" means Amazon, Dell, HP, Lenovo, Microsoft, Motorola, and Samsung, jointly and severally.

13.     The terms "Synaptics," "you," and "your" mean and include, individually and collectively, Synaptics Inc., and all of its U.S. and foreign predecessors, parents, subsidiaries, sister companies, affiliates, divisions, licensees, franchisees, assigns, or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, salespersons, sales representatives, employees of such entities, and representatives and any person or entity acting on its behalf.

14.     The term "Patent Office" means the United States Patent and Trademark Office.

15.     The term "'173 Patent" means U.S. Patent No. 8,432,173.

16.     The term "'910 Patent" means U.S. Patent No. 8,791,910.

17.     The term "'790 Patent" means U.S. Patent No. 9,024,790.

18.     The term "'580 Patent" means U.S. Patent No. 9,372,580.

19.     The term "Asserted Patent(s)" means the '173 Patent, the '910 Patent, the '790 Patent, and the '580 Patent, individually and/or collectively.

20.     The term "Asserted Claim(s)" means the claims of the Asserted Patents asserted in the Complaint against Respondent.

21.     The term "Accused Product(s)" means and includes each model of touch-controlled mobile devices, including smartphone and tablet devices, computers, including notebook and laptop computers, and associated components thereof imported into the United States, sold for importation within the United States, and/or sold after importation into the United States by Respondents, for Respondents, on Respondents' behalf, or through a website owned, operated, and/or controlled by Respondents, including but not limited to the products and devices identified in the Complaint, and all versions and variations thereof, including models, versions, and

variations that may be imported or sold by or for Respondents in the future and during the course of this Investigation.

22.     The term "Responsive Touch Controller" means and includes each model of touch controller made or sold by you that is included in any Accused Product.

23.     The term "component" means a constituent part of a system, including but not limited to capacitive touch sensors, touchpads, touch controllers, touchscreens, and any other means for recognizing and processing touch input signals.

24.     The terms "document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined by Commission Rule 210.30 and Federal Rule of Civil Procedure 34, and include all things within the meaning and scope of that term as used in the Commission's Rules of Practice and Procedure, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, including without limitation the following items, whether printed, recorded, microfilmed, reproduced by any process, written, produced by hand, or recorded in any other way, and whether or not claimed to be privileged, confidential, or personal: letters; correspondence; memoranda; notes; reports; records; agreements; working papers; communications (including intradepartmental and interdepartmental communications); summaries or records of personal conversations; calendars; diaries; forecasts; statistical statements; graphs; laboratory or research reports and notebooks; charts; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigations; opinions or reports of consultants; patents and patent application materials; patent appraisals; printed publications; trademark applications, certificates of registration, opinions of counsel; memoranda of agreements; assignments; licenses; reports of or summaries of either negotiations within or without

the corporation or preparations for such; bulletins; material and manufacturing specifications; material packaging; manufacturing logs; equipment specifications and operating information; product packaging; designs; instructions; advertisements; literature; work assignments; memoranda of conversations; notes; notebooks; drafts; data sheets; worksheets; contracts; minute books of account; orders; invoices; statements; bills; checks; vouchers; photographs; drawings; charts; catalogs; brochures; computer files; computer discs; articles; manuals; pamphlets; advertisements; circulars; press releases; drafts of any documents; books; instruments; accounts; bills of sale; tapes; electronic communications including but not limited to e-mails; telegraphic communications; original or preliminary notes; and all other materials of any tangible medium of expression. Any comment or notation appearing on any document, and not a part of the original text, is to be considered a separate "document."

25.     The term "thing(s)" has the broadest meaning allowable under Commission Rule 210.30 and Federal Rules of Civil Procedure 34. This meaning encompasses any tangible object of any kind and nature other than a document, including without limitation prototypes, models, and physical specimens thereof.

26.     The term "person(s)" means any natural person, individual, group, or entity. The acts of a person shall include the acts of the person's directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the person's behalf.

27.     The term "communication(s)" means any oral, written, or other contact between two or more persons or entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including but not limited to letters, memoranda, telegrams, telefaxes, telecopies, e-mails, text messages, fact-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

28.     The term "identify" or "identification," when used with respect to any natural person, means that the following information shall be provided:  the person's full name; last known home address; last known business address and telephone number; last known e-mail address; last known title or occupation; and last known employer.

29.     The term "identify" or "identification," when used with respect to any person other than a natural person, means that the following information shall be provided:  the person's name; the place of incorporation or organization; the principal place of business; and the nature of the business conducted by that person.

30.     The term "identify" or "identification," when used with respect to a document, means that the Bates number(s) or other litigation document control number(s) for that document shall be provided, or, if no such number exists, other information sufficient to locate that document, including but not limited to the following:  the date appearing on such document or, if no date appears on it, the approximate date the document was prepared; the identifying code, file number, title, or label; a general description of the document (e.g., letter, memorandum, drawing); the title or heading; the number of pages included in the document; the name of each person who signed or authorized the document; the name of each addressee; the name of each person having possession, custody, or control of the document; if the document existed at one time but does not presently exist, the reason(s) why it no longer exists and the identity of the last person having custody of it; and, if the document is in a foreign language, whether an English translation (partial or complete) of the document exists.

31.     The terms "entity" and "entities" mean any legal person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic person, business unit, or

5

collective organization, and any legal, governmental, organizational, or political subdivision thereof.

32.    The term "information" means information in any form, including but not limited to documentary, electronic, graphical, or tabular, and communicated by any means, including but not limited to orally, in writing, or via electronic communication.

33.    The term "relating to," "related to," "relate to," or "concerning," when referring to any given subject matter, means without limitation any information, document, or thing that in whole or in part and directly or indirectly relates to, concerns, regards, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to the particular subject matter identified.

34.    The term "including" means "including without limitation" and "including but not limited to."

35.    The terms "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each request in which they are used.

36.    Except where the context does not permit, the terms "each" and "any" shall mean any and all.

37.    The term "date" shall mean the exact date, if known, or the closest approximation to the exact date as can be specified, including without limitation, the year, month, week in a month, or part of a month.

38.    All other words are given their plain and ordinary meaning.

39.     If you find the meaning of any term in these Requests unclear, then you shall construe the term so as to render responsive any information, document, thing, or communication that might otherwise be rendered non-responsive.

40.     Any word written in the singular shall be construed as plural or vice versa in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope. The past tense as used in the below requests includes the present tense where the meaning is not distorted, and the verb form of a noun or pronoun may be used, as appropriate in particular context.

## **INSTRUCTIONS**

The following instructions are applicable to terms in each discovery request unless otherwise explicitly stated:

1.     In producing the documents and things requested, you shall furnish all documents and things known or available to you within your possession, custody, or control, wherever located (including outside the United States), regardless of whether such documents or things are possessed directly by you or by any of your agents, officers, employees, attorneys, representatives, or those acting on your behalf.

2.     If any documents responsive to these requests are withheld from production under a claim of privilege or other immunity from discovery, You shall provide a schedule of such withheld documents with enough detail for Complainant to assess the claim, including at least the following: (a) the basis on which the privilege is claimed; (b) the names and titles of the author(s) of the document and all other persons participating in the preparation of the document; (c) the name of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed; (d) the date of the document; (e) a description of any accompanying material

transmitted with or attached to such document; (f) the number of pages in such document; and (g) whether any business or non-legal matter is contained or discussed in such document.

3.    If the attorney-client privilege, work product immunity, or any other applicable privilege or immunity is asserted in response to any discovery request, you must expressly make the claim when responding. Absent agreement among the Parties, you must also produce, within ten calendar days of the date on which responses to these requests are due, a withheld document log that describes the nature of the information not produced or disclosed in a manner that will enable Complainant to assess the claim. The withheld document log must separately identify each withheld document, communication, or item, and specify the following for each entry in accordance with 19 C.F.R. § 210.27(e)(1) (absent agreement under 19 C.F.R. § 210.27(e)(3) and the Administrative Law Judge's Ground Rules):

a.    The date the information was created or communicated; the author(s) or speaker(s); all recipients; the employer and title of each author, speaker, or recipient, including whether that person is an attorney or patent agent; the general subject matter of the information; and the type of privilege or protection claimed; and

b.    To the extent the claim of attorney-client privilege or work product immunity is not being asserted as to the entirety of a document, Respondent shall produce in redacted form that portion of the document not covered by such claim of privilege or immunity.

4.    If, after exercising due diligence, you are unable to determine the existence of any documents or things falling within a discovery request requesting identification of documents or things, you shall so state in your written response.

8

5.      All documents produced in response to a discovery request shall be the original or true complete copies of the original. If an English translation of any document produced exists, the English translation shall be produced.

6.      "Electronically stored information" or "ESI" must be produced in the following format, barring mutual agreement by the parties:

a.      Single-page group IV TIFFs in at least 600 dpi for black and white images, or .JPG for images produced in color, with images produced using a unique file name that will be the production number of that page (e.g., ABC000001.TIFF). The production number shall appear on the face of the image;

b.      Searchable text files at the document level (one text file for each document, rather than one text file for each page of a document) for each document bearing the name of the beginning production number for each document (text of native files to be extracted directly from native files where possible; OCR for paper documents), productions that contain foreign language documents shall be Unicode compliant, document level text files with a .txt extension will be provided where available.  The text file name will correspond to the beginning production number of the image or native file.  A field will be included in the DAT with the path to the corresponding text file;

c.      Database load files and cross reference files, e.g., Concordance default delimited file (metadata) and an Opticon-delimited file (image reference files), and including the following fields (to the extent the metadata is available):  Beg Bates No.; End Bates No.; Bates Range; Bates Parentid; Attach Begin; Attach End; Page Count; From/Author; To/Recipient(s); CC; Bcc; Email Date Sent; Email Time

9

Sent; Email Date Received; Email Time Received; Email Subject; Custodian; File Name; Document Created Date; Document Last Modified Date; Document Last Accessed Date; File Type; Location/Source; Text Link (path to text), Native Link (path to native file);

d.      MS Excel, MS Powerpoint, MS Access, and comparable spreadsheet, presentation, and database files, and audio and video files, shall be produced in native format to the extent they do not include privileged redactions. Complainant may make reasonable requests to receive additional documents in their native format. For documents that are produced as native files, include in the set of image (PDF or TIFF) documents a slipsheet where the native file would otherwise have been produced indicating the production number of the native file or other document and the confidentiality designation.  In addition, native files shall be produced using a name that bears the production number, for example: ABC000002.xls. Indicate any confidentiality designation in the produced filename where possible; and

e.      for responsive information existing within a database or other compilation of data, include a field mapping explaining the type and format of data that exists in each location within the database.

7.     Documents that exist only in paper or hard-copy format should be scanned and processed according to the instructions above regarding ESI.

8.     No discovery request or part thereof shall be construed as a limitation on any other discovery request or part of a request.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Documents and things sufficient to identify each version, iteration, or model of each Responsive Touch Controller from January 1, 2014 to the present.

### REQUEST FOR PRODUCTION NO. 2:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

### REQUEST FOR PRODUCTION NO. 3:

Document sufficient to show all sales and pricing information for each Responsive Touch Controller from January 1, 2014 to the present.

### REQUEST FOR PRODUCTION NO. 4:

Two samples of each Responsive Touch Controller.

### REQUEST FOR PRODUCTION NO. 5:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to sending signals, e.g. capacitive touch drive signals, to a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

### REQUEST FOR PRODUCTION NO. 6:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to receiving signals, e.g. capacitive touch signals, from a touch sensor, including but not limited to training materials,

11

manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to processing and analyzing signals, e.g. capacitive touch signals, received from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

**DEPOSITION TOPICS**

**TOPIC NO. 1**

Each version, iteration, or model of each Responsive Touch Controller from January 1, 2014 to the present.

**TOPIC NO. 2**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 3**

Sales and pricing information for each Responsive Touch Controller from January 1, 2014 to the present.

**TOPIC NO. 4:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to sending signals, e.g. capacitive touch drive signals, to a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 5:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to receiving signals, e.g. capacitive touch signals, from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 6:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to processing and analyzing signals, e.g. capacitive touch signals, received from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**ATTACHMENT B**

**UNITED STATES INTERNATIONAL TRADE COMMISSION**

**Washington, D.C.**

| In the Matter of | |
| --- | --- |
| **CERTAIN TOUCH-CONTROLLED MOBILE DEVICES, COMPUTERS, AND COMPONENTS THEREOF** | Inv. No. 337-TA-1162 |

**ORDER NO. 1:      PROTECTIVE ORDER**

(June 24, 2019)

WHEREAS, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5;

IT IS HEREBY ORDERED THAT:

1. Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information. The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).  Any information submitted, in pre hearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted.  Documents shall be clearly and prominently marked on their face with the legend:  "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice.  Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

(b).  The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein.  If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3. In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than:  (i) outside counsel for parties to this investigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental

- 2 -

party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this investigation or related proceedings, or (b) in internal investigations, audits, reviews, evaluations relating to the programs, personnel, and operations of the Commission including under to 5 U.S.C. Appendix 3; and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.[1]

   4.   Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission:  (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation. The letter shall also include the following acknowledgement:

   I, the undersigned, on behalf of _____, acknowledge that information submitted for purposes of this Investigation may be disclosed to and used:

   (i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or

---

[1] *See* Commission Administrative Order 16-01 (Nov. 7, 2015).
[2] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

5.  If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 thereof.

6.  (a). Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above. Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal. When any confidential business information submitted in accordance with paragraph 2 above is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER." Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof. Alternatively, he or she shall sign the agreement included as Attachment A hereto. Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

- 4 -

(b).    Submitters[3] are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

7. The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8. The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the Administrative Law Judge. When such information is made part of a pleading or is offered into the evidentiary record, the data set

---

[3] "Submitters" of confidential business information are the same as "suppliers" of confidential business information as that term is used in the context of this order. *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before the Administrative Law Judge.   During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9.   Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation:  (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10.  If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order.  If prior to, or at the time of such a

- 6 -

conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation; such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may sua sponte question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11. No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefore prior to the initial disclosure.  If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling.  If the investigation is before the Commission the matter shall be submitted to the Commission for resolution.  The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the Administrative Law Judge.  The terms of this paragraph shall be inapplicable

to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.   If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.   Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.   Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made.  Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy such material (including electronic media containing such information) in its possession which it regards as surplusage.

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.   If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.   Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.   The Secretary shall serve a copy of this order upon all parties.


Cameron Elliot
Administrative Law Judge

Attachment A

NONDISCLOSURE AGREEMENT FOR REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in the matter of *Certain_____*, Investigation No. 337-TA-___, except as permitted in the protective order issued in this case.  I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.

Signed _____

Dated _____

Firm or affiliation _____

- 10 -



## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

**ADMINISTRATIVE ORDER:** 16-01

**DATE:** November 7, 2015

**SUBJECT:** Acknowledgement and Disclaimer Provisions Regarding Disclosure of Confidential Business Information or Business Proprietary Information

1. **PURPOSE:** This order establishes procedures for Commission personnel to follow in using acknowledgement and disclaimer provisions regarding the cybersecurity-related disclosure of confidential business information (CBI) or business proprietary information (BPI). The statutes governing CBI and BPI generally prohibit the Commission from disclosing CBI and BPI to persons outside certain classes of individuals for certain purposes without the consent of the information's submitter. The acknowledgement provision is designed to seek consent to permit disclosure to certain other classes of persons for other specified purposes, including cybersecurity purposes, while complying with statutory requirements. The disclaimer provision is also designed to urge the submission of nonpublic documents using encrypted methods and notify the submitter that it assumes the risk of unauthorized disclosure if a non-encrypted method is used.

2. **REFERENCES**

   a. Statutes imposing restrictions on the disclosure of CBI and BPI, including 18 U.S.C. § 1905; 19 U.S.C. §§ 1332(g), 1337(n), 1677f(b)(1)(A).

   b. Section 201.6 of the Commission's Rules of Practice and Procedures (19 C.F.R. § 201.6).

3. **ACKNOWLEDGEMENT AND DISCLAIMER PROVISIONS**

   a. The acknowledgement provision reads as follows:

   I, the undersigned, acknowledge that information submitted in response to this request for information and throughout this investigation or other proceeding may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or (ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

b.  The disclaimer provision reads as follows:

Submitters are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

c.  The acknowledgement and disclaimer provisions must be included in all protective orders issued in section 337 proceedings and in all Commission requests for CBI or BPI, including:

   i.  in questionnaires and instruction booklets, as appropriate, in import injury investigations and reviews and in industry and economic analysis proceedings; and
   
   ii.  in protective orders issued in section 337 proceedings, and in any other appropriate mechanisms for submission of CBI to be determined by the Commission's Administrative Law Judges.

d.  In the acknowledgement provision, the phrase "internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission" does not include statutory Commission proceedings (*viz.*, proceedings under our statutory authorities, such as 19 U.S.C. §§ 1332, 1337, 2252, and Title VII of the Tariff Act of 1930 (19 U.S.C. §§ 1303, 1516A, 1671-1677n)).

The acknowledgement provision does not permit CBI or BPI submitted in a statutory Commission proceeding to be disclosed or used in any other proceeding, with two exceptions. In the case of proceedings under Title VII of the Tariff Act of 1930, the Commission and its investigative staff may use BPI in other proceedings involving the same or similar merchandise pursuant to the authorization in the questionnaire form. In the case of proceedings under section 337 of the Tariff Act of 1930, use of CBI or BPI is permitted in related proceedings as defined in Commission Rule 210.3.

e.  In the acknowledgement provision, the phrase "cybersecurity purposes" means "detecting, preventing, analyzing, investigating, responding to, and reporting on cyber vulnerabilities, misconfigurations or inappropriate permissions on networks, or known or suspected malicious cyber activity."

f.  Protective orders in section 337 proceedings also must include a statement that third party suppliers of CBI should be given a copy of the protective order.

This order supersedes Administrative Order 97-06 and remains in effect until superseded or rescinded.

By order of the Chairman:

_____

Meredith M. Broadbent

**CERTAIN TOUCH-CONTROLLED MOBILE DEVICES,
COMPUTERS, AND COMPONENTS THEREOF**

INV. NO. 337-TA-1162

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **Order No. 01** has been served upon
the following parties as indicated, on _____ **JUN 2 4 2019** _____ .

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street SW, Room 112A
Washington, DC 20436

| FOR COMPLAINANT NEODRON LTD. | |
|---|---|
| Asha Allam, Esq.<br>**ADDUCI, MASTRIANI & SCHAUMBERG, LLP**<br>1133 Connecticut Avenue, NW, 12th Floor<br>Washington, DC  20036 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **FOR RESPONDENT AMAZON.COM, INC.** | |
| Stefani E. Shanberg, Esq.<br>**MORRISON & FOERSTER LLP**<br>425 Market Street<br>San Francisco, CA  94105 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **FOR RESPONDENTS SAMSUNG ELECTRONICS CO., LTD & SAMSUNG ELECTRONICS AMERICA, INC.** | |
| D. Sean Trainor, Esq.<br>**O'MELVENY & MYERS LLP**<br>1625 Eye Street, NW<br>Washington, DC  20006 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |

**CERTAIN TOUCH-CONTROLLED MOBILE DEVICES,
COMPUTERS, AND COMPONENTS THEREOF**

INV. NO. 337-TA-1162

| **RESPONDENT DELL TECHNOLOGIES INC.** | |
|---|---|
| One Dell Way<br>Round Rock, TX  78682 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |
| **RESPONDENT HP INC.** | |
| 1501 Page Mill Road<br>Palo Alto, CA  94304 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |
| **RESPONDENTS LENOVO GROUP LTD., LEVONO (UNITED STATES) INC. & MOTOROLA MOBILITY LLC** | |
| Cecilia Sanabria, Esq.<br>**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP**<br>901 New York Avenue, NW<br>Washington, DC  20001 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |
| **RESPONDENT MICROSOFT CORPORATION** | |
| One Microsoft Way<br>Redmond, WA 98052 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

**The Honorable Cameron R. Elliot**
**Administrative Law Judge**

| | |
|---|---|
| **In the Matter of** | |
| **CERTAIN TOUCH-CONTROLLED MOBILE DEVICES, COMPUTERS, AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1162** |

## COMPLAINANT'S APPLICATION FOR ISSUANCE OF SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM*

Pursuant to 19 C.F.R. § 210.32 and Ground Rule 4.5, Complainant Neodron Ltd. ("Neodron") applies to the Administrative Law Judge ("ALJ") for issuance of a subpoena *duces tecum* and *ad testificandum* to:

> **Synaptics Inc.**
> **1251 McKay Dr.**
> **San Jose, CA 95131**
>
> **Registered Agent:**
> **CT Corporation System**
> **111 Eight Ave., 13th Floor**
> **New York, NY 10011**
>
> **818 Seventh St., Ste. 930**
> **Los Angeles, CA 90017**

The requested subpoena requires Synaptics Inc. ("Synaptics") to produce the documents, materials, and things described in Attachment A to the subpoena, consistent with the Protective Order (Attachment B), at the time and place indicated on the subpoena. The subpoena further requires Synaptics to identify and designate the most knowledgeable individual(s) to appear and give testimony as it relates to the topics described in Attachment A, at the specified location and date or at such other location and date on which Complainant and Synaptics mutually agree.

1

Synaptics is a supplier of relevant components of Respondents' accused infringing devices in this Investigation, such as touch controllers. Thus, Synaptics's documents and information related to these components, specifically their structure, function, design, operation, development, and manufacture, as well as Synaptics's relationship with Respondents, are relevant to the subject matter of this Investigation. Synaptics's website confirms that the company designs, develops, manufactures, and sells touch controllers, and is in possession, custody, or control of technical information for touch controllers incorporated into accused infringing devices. *See, e.g.,* https://www.synaptics.com/products/touch-controllers; https://www.synaptics.com/products.

Respondents HP and Samsung identified Synaptics to Complainant in discovery as a supplier of touch control components in its accused infringing devices. While Complainant has attempted and will continue to attempt to obtain discovery on the touch components Synaptics supplies, HP and Samsung have already objected to providing such third-party information.

The scope of the documents and testimony requested in Attachment A is both reasonable and narrowly tailored to relevant issues in this Investigation and, therefore, will not require an extensive production of documents or require extensive time to comply. Complainant has narrowly tailored the proposed subpoena to minimize the burden on Synaptics by only seeking information and documents related to touch controllers that have been made or sold by Synaptics and incorporated into Respondents' accused infringing devices. The information sought is highly relevant to the issues to be addressed in this Investigation, including, e.g., infringement of the accused infringing devices by way of Synaptics's components. Complainant believes that it will be unable to obtain the requested information by alternate means because Respondents object to providing any such information they have and Synaptics is in possession of this information.

2

Complainant will serve the subpoena, including a copy of the Protective Order, and this application by overnight delivery, if not sooner.

For the reasons set forth above, Complainant respectfully requests that the Administrative Law Judge grant this application for issuance of a subpoena *duces tecum* and *ad testificandum* and issue the attached subpoena.


Date: July 18, 2019                              Respectfully submitted,

                                                 */s/ Matthew D. Aichele*_____
                                                 Tom M. Schaumberg
                                                 Asha Allam
                                                 David H. Hollander
                                                 Evan H. Langdon
                                                 Paulina M. Starostka
                                                 **ADDUCI, MASTRIANI & SCHAUMBERG, LLP**
                                                 1133 Connecticut Avenue, NW, 12th Floor
                                                 Washington, DC 20036
                                                 Telephone:  (202) 467-6300
                                                 Facsimile:   (202) 466-2006
                                                 E-Mail:  NEO-001@adduci.com

                                                 Reza Mirzaie
                                                 Marc A. Fenster
                                                 Brian D. Ledahl
                                                 Neil A. Rubin
                                                 Kent N. Shum
                                                 Philip X. Wang
                                                 Kristopher R. Davis
                                                 Shani Williams
                                                 Amy E. Hayden
                                                 Christian W. Conkle
                                                 **RUSS AUGUST & KABAT**
                                                 12424 Wilshire Boulevard, 12th Floor
                                                 Los Angeles, CA 90025
                                                 Phone: (310) 826-7474
                                                 E-Mail:  rak_neodron_itc@raklaw.com

                                                 Matthew D. Aichele
                                                 **RUSS AUGUST & KABAT**

915 E Street NW, Suite 405
Washington, DC 20004
Phone: (310) 826-7474
E-Mail:  rak_neodron_itc@raklaw.com

*Counsel for Complainant Neodron Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that a copy of the **SUBPOENA** *DUCES TECUM* **TO SYNAPTICS, INC**. was served on the following, in the manner indicated below, this 19th day of July 2019:

Synaptics, Inc.         ☒ **VIA FEDERAL EXPRESS MAIL**
1251 McKay Drive
San Jose, CA  95131

Registered Agent:
CT Corporation System
111 Eight Avenue, 13th Floor
New York, NY 10011

CT Corporation System
818 Seventh Street, Suite 930
Los Angeles, CA 90017

**<u>R</u>ESPONDENT <u>A</u>MAZON.COM, <u>I</u>NC.:**

Stefani E. Shanberg        ☒ **VIA ELECTRONIC MAIL**
Nathan B. Sabri          AmazonNeodronITC@mofo.com
Robin L. Brewer
Rachel S. Dolphin
Mathieu A. Swiderski
John S. Douglass
**M**ORRISON **& F**OERSTER **LLP**
425 Market Street
San Francisco, CA 94105

G. Brian Busey
Veronica S. Ascarrunz
David Nathaniel Tan
**M**ORRISON **& F**OERSTER **LLP**
2000 Pennsylvania Avenue, NW, Suite 6000
Washington, DC 20006

**<u>R</u>ESPONDENT <u>D</u>ELL <u>T</u>ECHNOLOGIES <u>I</u>NC.:**

Adam D. Swain         ☒ **VIA ELECTRONIC MAIL**
Brian D. Hill           Dell-Neodron-ITC@alston.com
**A**LSTON **& B**IRD **LLP**
950 F Street, NW
Washington, DC 20004

Michael J. Newton
**A**LSTON **& B**IRD **LLP**

1950 University Avenue, 5th Floor
East Palo Alto, CA 94303

Brady Cox
Michael Lee
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201

**RESPONDENTS HP INC. AND MICROSOFT CORPORATION:**

Sean C. Cunningham                    ☒   **VIA ELECTRONIC MAIL**
Erin P. Gibson                             DLA1162@us.dlapiper.com
Robert Williams
David R. Knudson
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101

Brian Erickson
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701

James Heintz
**DLA PIPER LLP (US)**
One Fountain Square
11911 Freedom Drive, Suite 300
Reston, VA 20190

Erik Fuehrer
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303

Stephanie Lim
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606

**RESPONDENTS LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., AND MOTOROLA MOBILITY LLC:**

Lionel M. Lavenue                     ☒   **VIA ELECTRONIC MAIL**
Cecilia Sanabria                          Lenovo-Motorola-1162-ITC@finnegan.com
Smith R. Brittingham IV
Marcus A.R. Childress

2

Jorge F. Gonzalez
Amanda E. Stephenson
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER LLP**
901 New York Avenue, NW
Washington, DC 20001

**RESPONDENT SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD.:**

Ryan K. Yagura                            ☒   **VIA ELECTRONIC MAIL**
Nicholas J. Whilt                              NeodronSamsungOMM@omm.com
Brian Cook
Ben Haber
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, CA 90071

John Kappos
Bo Moon
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660

D. Sean Trainor
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006

Darin Snyder
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111

                              */s/ Irina Komarov, Paralegal*
                              ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.

# EXHIBIT D



Matthew D. Aichele
maichele@raklaw.com

12424 Wilshire Blvd.

Twelfth Floor

Los Angeles

California

90025

Tel 310.826.7474

Fax 310.826.6991

www.raklaw.com

July 19, 2019

**VIA FEDEX OVERNIGHT DELIVERY**

Goodix Technology, Inc.
6370 Lusk Boulevard, Suite F204
San Diego, CA  92121

Registered Agent:
Fan Zhang
6370 Lusk Boulevard, Suite F204
San Diego, CA 92121

Re:     *In the Matter of Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof,* **Inv. No. 337-TA-1162**

Dear Sir/Madam:

Enclosed please find a Subpoena *Duces Tecum* and *Ad Testificandum* to Goodix Technology, Inc. ("Goodix") that was issued by the Administrative Law Judge in the above-referenced Investigation, which includes as Attachment B Order No. 1, the Protective Order in this Investigation. Please note that any confidential documents produced by Goodix and labeled with the heading "Confidential Business Information Subject to Protective Order" will be maintained in accordance with Order No. 1.

Also enclosed is the Subpoena Application that was submitted to the ALJ, which sets forth the relevance of the documents requested in Attachment A of the subpoena.

If you have any questions, please do not hesitate to contact me at (202) 664-0623 or maichele@raklaw.com.

Very truly yours,

Russ, August & Kabat

*/s/ Matthew D. Aichele*
Matthew D. Aichele

Enclosures

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN TOUCH-CONTROLLED**<br>**MOBILE DEVICES, COMPUTERS,**<br>**AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1162** |

## SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM*

**TO:**

> **Goodix Technology, Inc.**
> **6370 Lusk Blvd., Ste F204**
> **San Diego, CA 92121**
>
> <u>**Registered Agent**</u>**:**
> **Fan Zhang**
> **6370 Lusk Blvd., Ste F204**
> **San Diego, CA 92121**

**TAKE NOTICE:** By authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(C)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by Complainant Neodron Ltd. ("Neodron"),

**YOU ARE HEREBY ORDERED** to produce at Russ, August & Kabat, 12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025, on August 6, 2019, or at such other time and place agreed upon, all of the documents and things in your possession, custody, or control, which are listed and described in Attachment A. Such production will be for the purpose of inspection and copying, as desired.

If production of any document listed and described in Attachment A is withheld on the basis of a claim of privilege, each withheld document should be separately identified in a privileged document list. The privileged document list must identify each document separately, specifying

for each document at least: (1) the date; (2) author(s)/sender(s); (3) recipient(s), including copy recipients; and (4) general subject matter of the document. The sender(s) or the recipient(s) shall be identified by position and entity (corporation or firm, *etc.*) with which they are employed or associated. If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified. The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

If any of the documents or things listed and described in Attachment A are considered "confidential business information," as that term is defined in Protective Order (Order No. 1) attached hereto as Attachment B, such documents or things should be produced subject to the terms and provisions of the Protective Order.

**YOU ARE FURTHER HEREBY ORDERED** to present yourself for purposes of your deposition upon oral examination on August 22, 2019, at Russ, August & Kabat, 12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025, or at such other time and place agreed upon, concerning the subject matter set forth in Attachment A hereto.

This deposition will be taken before a Notary Public or other person authorized to administer oaths and will continue from day to day until completed. If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in the Protective Order attached hereto, such documents or things shall be produced subject to the terms and provisions of the Protective Order.

Any motion to limit or quash this subpoena shall be filed within **ten (10) days** after the receipt thereof. At the time of filing of any motion concerning this subpoena, two courtesy copies shall be served concurrently on the Administrative Law Judge at his office.

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set his hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this 19 day of _____, 2019.

Cameron Elliot
Administrative Law Judge
United States International Trade Commission

Presiding in *Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*, Inv. No. 337-TA-1162

**ATTACHMENT A**

**<u>DEFINITIONS</u>**

1.　　The term "Commission" or "ITC" refers to the United States International Trade Commission.

2.　　The term "Complainant" means and includes Complainant Neodron Ltd.

3.　　The term "Investigation" means the above-captioned investigation, *Certain Touch-Controlled Mobile Devices, Computers, and Components*, United States International Trade Commission, Investigation No. 337-TA-1162.

4.　　The term "Complaint" means the Complaint under Section 337 of the Tariff Act of 1930, as amended, filed by Complainant with the Secretary's Office of the United States International Trade Commission on May 22, 2019, as well as any supplement to or amended version of that Complaint, including the First Amended Complaint filed on May 23, 2019.

5.　　The term "Amazon" means Amazon.com, Inc.

6.　　The term "Dell" means Dell Technologies Inc.

7.　　The term "HP" means HP Inc.

8.　　The term "Lenovo" means Lenovo Group Ltd. and Lenovo (United States) Inc.

9.　　The term "Microsoft" means Microsoft Corporation.

10.　　The term "Motorola" means Motorola Mobility LLC.

11.　　The term "Samsung" means Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

12.　　The term "Respondents" means Amazon, Dell, HP, Lenovo, Microsoft, Motorola, and Samsung, jointly and severally.

13.     The terms "Goodix," "you," and "your" mean and include, individually and collectively, Goodix Technology, Inc., and all of its U.S. and foreign predecessors, parents, subsidiaries, sister companies, affiliates, divisions, licensees, franchisees, assigns, or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, salespersons, sales representatives, employees of such entities, and representatives and any person or entity acting on its behalf.

14.     The term "Patent Office" means the United States Patent and Trademark Office.

15.     The term "'173 Patent" means U.S. Patent No. 8,432,173.

16.     The term "'910 Patent" means U.S. Patent No. 8,791,910.

17.     The term "'790 Patent" means U.S. Patent No. 9,024,790.

18.     The term "'580 Patent" means U.S. Patent No. 9,372,580.

19.     The term "Asserted Patent(s)" means the '173 Patent, the '910 Patent, the '790 Patent, and the '580 Patent, individually and/or collectively.

20.     The term "Asserted Claim(s)" means the claims of the Asserted Patents asserted in the Complaint against Respondent.

21.     The term "Accused Product(s)" means and includes each model of touch-controlled mobile devices, including smartphone and tablet devices, computers, including notebook and laptop computers, and associated components thereof imported into the United States, sold for importation within the United States, and/or sold after importation into the United States by Respondents, for Respondents, on Respondents' behalf, or through a website owned, operated, and/or controlled by Respondents, including but not limited to the products and devices identified in the Complaint, and all versions and variations thereof, including models, versions, and

variations that may be imported or sold by or for Respondents in the future and during the course of this Investigation.

22.     The term "Responsive Touch Controller" means and includes each model of touch controller made or sold by you that is included in any Accused Product.

23.     The term "component" means a constituent part of a system, including but not limited to capacitive touch sensors, touchpads, touch controllers, touchscreens, and any other means for recognizing and processing touch input signals.

24.     The terms "document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined by Commission Rule 210.30 and Federal Rule of Civil Procedure 34, and include all things within the meaning and scope of that term as used in the Commission's Rules of Practice and Procedure, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, including without limitation the following items, whether printed, recorded, microfilmed, reproduced by any process, written, produced by hand, or recorded in any other way, and whether or not claimed to be privileged, confidential, or personal: letters; correspondence; memoranda; notes; reports; records; agreements; working papers; communications (including intradepartmental and interdepartmental communications); summaries or records of personal conversations; calendars; diaries; forecasts; statistical statements; graphs; laboratory or research reports and notebooks; charts; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigations; opinions or reports of consultants; patents and patent application materials; patent appraisals; printed publications; trademark applications, certificates of registration, opinions of counsel; memoranda of agreements; assignments; licenses; reports of or summaries of either negotiations within or without

3

the corporation or preparations for such; bulletins; material and manufacturing specifications; material packaging; manufacturing logs; equipment specifications and operating information; product packaging; designs; instructions; advertisements; literature; work assignments; memoranda of conversations; notes; notebooks; drafts; data sheets; worksheets; contracts; minute books of account; orders; invoices; statements; bills; checks; vouchers; photographs; drawings; charts; catalogs; brochures; computer files; computer discs; articles; manuals; pamphlets; advertisements; circulars; press releases; drafts of any documents; books; instruments; accounts; bills of sale; tapes; electronic communications including but not limited to e-mails; telegraphic communications; original or preliminary notes; and all other materials of any tangible medium of expression. Any comment or notation appearing on any document, and not a part of the original text, is to be considered a separate "document."

25.     The term "thing(s)" has the broadest meaning allowable under Commission Rule 210.30 and Federal Rules of Civil Procedure 34. This meaning encompasses any tangible object of any kind and nature other than a document, including without limitation prototypes, models, and physical specimens thereof.

26.     The term "person(s)" means any natural person, individual, group, or entity. The acts of a person shall include the acts of the person's directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the person's behalf.

27.     The term "communication(s)" means any oral, written, or other contact between two or more persons or entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including but not limited to letters, memoranda, telegrams, telefaxes, telecopies, e-mails, text messages, fact-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

4

28.    The term "identify" or "identification," when used with respect to any natural person, means that the following information shall be provided:  the person's full name; last known home address; last known business address and telephone number; last known e-mail address; last known title or occupation; and last known employer.

29.    The term "identify" or "identification," when used with respect to any person other than a natural person, means that the following information shall be provided:  the person's name; the place of incorporation or organization; the principal place of business; and the nature of the business conducted by that person.

30.    The term "identify" or "identification," when used with respect to a document, means that the Bates number(s) or other litigation document control number(s) for that document shall be provided, or, if no such number exists, other information sufficient to locate that document, including but not limited to the following:  the date appearing on such document or, if no date appears on it, the approximate date the document was prepared; the identifying code, file number, title, or label; a general description of the document (e.g., letter, memorandum, drawing); the title or heading; the number of pages included in the document; the name of each person who signed or authorized the document; the name of each addressee; the name of each person having possession, custody, or control of the document; if the document existed at one time but does not presently exist, the reason(s) why it no longer exists and the identity of the last person having custody of it; and, if the document is in a foreign language, whether an English translation (partial or complete) of the document exists.

31.    The terms "entity" and "entities" mean any legal person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic person, business unit, or

collective organization, and any legal, governmental, organizational, or political subdivision thereof.

32.     The term "information" means information in any form, including but not limited to documentary, electronic, graphical, or tabular, and communicated by any means, including but not limited to orally, in writing, or via electronic communication.

33.     The term "relating to," "related to," "relate to," or "concerning," when referring to any given subject matter, means without limitation any information, document, or thing that in whole or in part and directly or indirectly relates to, concerns, regards, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to the particular subject matter identified.

34.     The term "including" means "including without limitation" and "including but not limited to."

35.     The terms "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each request in which they are used.

36.     Except where the context does not permit, the terms "each" and "any" shall mean any and all.

37.     The term "date" shall mean the exact date, if known, or the closest approximation to the exact date as can be specified, including without limitation, the year, month, week in a month, or part of a month.

38.     All other words are given their plain and ordinary meaning.

39.     If you find the meaning of any term in these Requests unclear, then you shall construe the term so as to render responsive any information, document, thing, or communication that might otherwise be rendered non-responsive.

40.     Any word written in the singular shall be construed as plural or vice versa in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope. The past tense as used in the below requests includes the present tense where the meaning is not distorted, and the verb form of a noun or pronoun may be used, as appropriate in particular context.

## **INSTRUCTIONS**

The following instructions are applicable to terms in each discovery request unless otherwise explicitly stated:

1.     In producing the documents and things requested, you shall furnish all documents and things known or available to you within your possession, custody, or control, wherever located (including outside the United States), regardless of whether such documents or things are possessed directly by you or by any of your agents, officers, employees, attorneys, representatives, or those acting on your behalf.

2.     If any documents responsive to these requests are withheld from production under a claim of privilege or other immunity from discovery, You shall provide a schedule of such withheld documents with enough detail for Complainant to assess the claim, including at least the following:  (a) the basis on which the privilege is claimed; (b) the names and titles of the author(s) of the document and all other persons participating in the preparation of the document; (c) the name of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed; (d) the date of the document; (e) a description of any accompanying material

transmitted with or attached to such document; (f) the number of pages in such document; and (g) whether any business or non-legal matter is contained or discussed in such document.

3.     If the attorney-client privilege, work product immunity, or any other applicable privilege or immunity is asserted in response to any discovery request, you must expressly make the claim when responding. Absent agreement among the Parties, you must also produce, within ten calendar days of the date on which responses to these requests are due, a withheld document log that describes the nature of the information not produced or disclosed in a manner that will enable Complainant to assess the claim. The withheld document log must separately identify each withheld document, communication, or item, and specify the following for each entry in accordance with 19 C.F.R. § 210.27(e)(1) (absent agreement under 19 C.F.R. § 210.27(e)(3) and the Administrative Law Judge's Ground Rules):

     a.     The date the information was created or communicated; the author(s) or speaker(s); all recipients; the employer and title of each author, speaker, or recipient, including whether that person is an attorney or patent agent; the general subject matter of the information; and the type of privilege or protection claimed; and

     b.     To the extent the claim of attorney-client privilege or work product immunity is not being asserted as to the entirety of a document, Respondent shall produce in redacted form that portion of the document not covered by such claim of privilege or immunity.

4.     If, after exercising due diligence, you are unable to determine the existence of any documents or things falling within a discovery request requesting identification of documents or things, you shall so state in your written response.

5.      All documents produced in response to a discovery request shall be the original or true complete copies of the original. If an English translation of any document produced exists, the English translation shall be produced.

6.      "Electronically stored information" or "ESI" must be produced in the following format, barring mutual agreement by the parties:

a.      Single-page group IV TIFFs in at least 600 dpi for black and white images, or .JPG for images produced in color, with images produced using a unique file name that will be the production number of that page (e.g., ABC000001.TIFF). The production number shall appear on the face of the image;

b.      Searchable text files at the document level (one text file for each document, rather than one text file for each page of a document) for each document bearing the name of the beginning production number for each document (text of native files to be extracted directly from native files where possible; OCR for paper documents), productions that contain foreign language documents shall be Unicode compliant, document level text files with a .txt extension will be provided where available.  The text file name will correspond to the beginning production number of the image or native file.  A field will be included in the DAT with the path to the corresponding text file;

c.      Database load files and cross reference files, e.g., Concordance default delimited file (metadata) and an Opticon-delimited file (image reference files), and including the following fields (to the extent the metadata is available):  Beg Bates No.; End Bates No.; Bates Range; Bates Parentid; Attach Begin; Attach End; Page Count; From/Author; To/Recipient(s); CC; Bcc; Email Date Sent; Email Time

9

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Documents and things sufficient to identify each version, iteration, or model of each Responsive Touch Controller from January 1, 2014 to the present.

### REQUEST FOR PRODUCTION NO. 2:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

### REQUEST FOR PRODUCTION NO. 3:

Document sufficient to show all sales and pricing information for each Responsive Touch Controller from January 1, 2014 to the present.

### REQUEST FOR PRODUCTION NO. 4:

Two samples of each Responsive Touch Controller.

### REQUEST FOR PRODUCTION NO. 5:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to sending signals, e.g. capacitive touch drive signals, to a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

### REQUEST FOR PRODUCTION NO. 6:

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to receiving signals, e.g. capacitive touch signals, from a touch sensor, including but not limited to training materials,

11

manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to show the design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to processing and analyzing signals, e.g. capacitive touch signals, received from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code, including but not limited to source code in C, C++, VDHL, and Verilog.

## DEPOSITION TOPICS

**TOPIC NO. 1**

Each version, iteration, or model of each Responsive Touch Controller from January 1, 2014 to the present.

**TOPIC NO. 2**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 3**

Sales and pricing information for each Responsive Touch Controller from January 1, 2014 to the present.

**TOPIC NO. 4:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to sending signals, e.g. capacitive touch drive signals, to a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 5:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to receiving signals, e.g. capacitive touch signals, from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**TOPIC NO. 6:**

The design, manufacturing, structure, function, operation, features, and configuration of each Responsive Touch Controller with respect to processing and analyzing signals, e.g. capacitive touch signals, received from a touch sensor, including but not limited to training materials, manuals, user guides, requirements documents, and source code of each Responsive Touch Controller.

**ATTACHMENT B**

# UNITED STATES INTERNATIONAL TRADE COMMISSION

## Washington, D.C.

In the Matter of

**CERTAIN TOUCH-CONTROLLED
MOBILE DEVICES, COMPUTERS, AND
COMPONENTS THEREOF**

Inv. No. 337-TA-1162

**ORDER NO. 1:**     **PROTECTIVE ORDER**

(June 24, 2019)

WHEREAS, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5;

IT IS HEREBY ORDERED THAT:

1. Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information.  The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).  Any information submitted, in pre hearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted.   Documents shall be clearly and prominently marked on their face with the legend:   "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice.   Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

(b).  The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein.  If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3. In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than:  (i) outside counsel for parties to this investigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental

- 2 -

party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this investigation or related proceedings, or (b) in internal investigations, audits, reviews, evaluations relating to the programs, personnel, and operations of the Commission including under to 5 U.S.C. Appendix 3; and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.[1]

4.   Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission:  (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation. The letter shall also include the following acknowledgement:

> I, the undersigned, on behalf of _____, acknowledge that information submitted for purposes of this Investigation may be disclosed to and used:
>
> (i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or

---

[1] *See* Commission Administrative Order 16-01 (Nov. 7, 2015).
[2] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

5.  If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 thereof.

6.  (a). Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above.  Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal.  When any confidential business information submitted in accordance with paragraph 2 above is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER." Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof.  Alternatively, he or she shall sign the agreement included as Attachment A hereto. Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

- 4 -

(b).    Submitters[3] are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

7. The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8. The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the Administrative Law Judge. When such information is made part of a pleading or is offered into the evidentiary record, the data set

---

[3] "Submitters" of confidential business information are the same as "suppliers" of confidential business information as that term is used in the context of this order. *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before the Administrative Law Judge.   During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9.   Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation:  (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10.   If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order.   If prior to, or at the time of such a

- 6 -

conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation; such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may sua sponte question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11.  No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefore prior to the initial disclosure.  If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling.  If the investigation is before the Commission the matter shall be submitted to the Commission for resolution.  The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the Administrative Law Judge.  The terms of this paragraph shall be inapplicable

- 7 -

to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.   If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.   Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.   Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made.  Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy such material (including electronic media containing such information) in its possession which it regards as surplusage.

- 8 -

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.   If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.   Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.   The Secretary shall serve a copy of this order upon all parties.

Cameron Elliot
Administrative Law Judge

- 9 -

Attachment A

NONDISCLOSURE AGREEMENT FOR REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in the matter of *Certain_____*, Investigation No. 337-TA-___, except as permitted in the protective order issued in this case. I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.

Signed _____

Dated _____

Firm or affiliation _____

- 10 -



## UNITED STATES INTERNATIONAL TRADE COMMISSION

### WASHINGTON, DC 20436

**ADMINISTRATIVE ORDER:** 16-01

**DATE:** November 7, 2015

**SUBJECT:** Acknowledgement and Disclaimer Provisions Regarding Disclosure of Confidential Business Information or Business Proprietary Information

1. **PURPOSE:** This order establishes procedures for Commission personnel to follow in using acknowledgement and disclaimer provisions regarding the cybersecurity-related disclosure of confidential business information (CBI) or business proprietary information (BPI). The statutes governing CBI and BPI generally prohibit the Commission from disclosing CBI and BPI to persons outside certain classes of individuals for certain purposes without the consent of the information's submitter. The acknowledgement provision is designed to seek consent to permit disclosure to certain other classes of persons for other specified purposes, including cybersecurity purposes, while complying with statutory requirements. The disclaimer provision is also designed to urge the submission of nonpublic documents using encrypted methods and notify the submitter that it assumes the risk of unauthorized disclosure if a non-encrypted method is used.

2. **REFERENCES**

   a. Statutes imposing restrictions on the disclosure of CBI and BPI, including 18 U.S.C. § 1905; 19 U.S.C. §§ 1332(g), 1337(n), 1677f(b)(1)(A).

   b. Section 201.6 of the Commission's Rules of Practice and Procedures (19 C.F.R. § 201.6).

3. **ACKNOWLEDGEMENT AND DISCLAIMER PROVISIONS**

   a. The acknowledgement provision reads as follows:

   I, the undersigned, acknowledge that information submitted in response to this request for information and throughout this investigation or other proceeding may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or
(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

b. The disclaimer provision reads as follows:

Submitters are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

c. The acknowledgement and disclaimer provisions must be included in all protective orders issued in section 337 proceedings and in all Commission requests for CBI or BPI, including:

    i.    in questionnaires and instruction booklets, as appropriate, in import injury investigations and reviews and in industry and economic analysis proceedings; and

    ii.    in protective orders issued in section 337 proceedings, and in any other appropriate mechanisms for submission of CBI to be determined by the Commission's Administrative Law Judges.

d. In the acknowledgement provision, the phrase "internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission" does not include statutory Commission proceedings (*viz.*, proceedings under our statutory authorities, such as 19 U.S.C. §§ 1332, 1337, 2252, and Title VII of the Tariff Act of 1930 (19 U.S.C. §§ 1303, 1516A, 1671-1677n)).

The acknowledgement provision does not permit CBI or BPI submitted in a statutory Commission proceeding to be disclosed or used in any other proceeding, with two exceptions. In the case of proceedings under Title VII of the Tariff Act of 1930, the Commission and its investigative staff may use BPI in other proceedings involving the same or similar merchandise pursuant to the authorization in the questionnaire form. In the case of proceedings under section 337 of the Tariff Act of 1930, use of CBI or BPI is permitted in related proceedings as defined in Commission Rule 210.3.

e. In the acknowledgement provision, the phrase "cybersecurity purposes" means "detecting, preventing, analyzing, investigating, responding to, and reporting on cyber vulnerabilities, misconfigurations or inappropriate permissions on networks, or known or suspected malicious cyber activity."

f. Protective orders in section 337 proceedings also must include a statement that third party suppliers of CBI should be given a copy of the protective order.

This order supersedes Administrative Order 97-06 and remains in effect until superseded or rescinded.

By order of the Chairman:

_Meredith M. Broadbent_

_____

Meredith M. Broadbent

**CERTAIN TOUCH-CONTROLLED MOBILE DEVICES,
COMPUTERS, AND COMPONENTS THEREOF**

INV. NO. 337-TA-1162

## <u>PUBLIC CERTIFICATE OF SERVICE</u>

I, Lisa R. Barton, hereby certify that the attached **Order No. 01** has been served upon
the following parties as indicated, on _____ **JUN 2 4 2019** _____.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street SW, Room 112A
Washington, DC 20436

| **FOR COMPLAINANT NEODRON LTD.** | |
|---|---|
| Asha Allam, Esq.<br>**ADDUCI, MASTRIANI & SCHAUMBERG, LLP**<br>1133 Connecticut Avenue, NW, 12th Floor<br>Washington, DC  20036 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |
| **FOR RESPONDENT AMAZON.COM, INC.** | |
| Stefani E. Shanberg, Esq.<br>**MORRISON & FOERSTER LLP**<br>425 Market Street<br>San Francisco, CA  94105 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |
| **FOR RESPONDENTS SAMSUNG ELECTRONICS CO., LTD & SAMSUNG ELECTRONICS AMERICA, INC.** | |
| D. Sean Trainor, Esq.<br>**O'MELVENY & MYERS LLP**<br>1625 Eye Street, NW<br>Washington, DC  20006 | (  ) Via Hand Delivery<br>(  ) Express Delivery<br>(✓) Via First Class Mail<br>(  ) Other: _____ |

**CERTAIN TOUCH-CONTROLLED MOBILE DEVICES,
COMPUTERS, AND COMPONENTS THEREOF**

INV. NO. 337-TA-1162

| | |
|---|---|
| **RESPONDENT DELL TECHNOLOGIES INC.** | |
| One Dell Way<br>Round Rock, TX  78682 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **RESPONDENT HP INC.** | |
| 1501 Page Mill Road<br>Palo Alto, CA  94304 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **RESPONDENTS LENOVO GROUP LTD., LEVONO (UNITED STATES) INC. & MOTOROLA MOBILITY LLC** | |
| Cecilia Sanabria, Esq.<br>**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP**<br>901 New York Avenue, NW<br>Washington, DC  20001 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **RESPONDENT MICROSOFT CORPORATION** | |
| One Microsoft Way<br>Redmond, WA 98052 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**The Honorable Cameron R. Elliot**
**Administrative Law Judge**

| In the Matter of | |
| --- | --- |
| **CERTAIN TOUCH-CONTROLLED MOBILE DEVICES, COMPUTERS, AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1162** |

**COMPLAINANT'S APPLICATION FOR ISSUANCE OF**
**SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM***

Pursuant to 19 C.F.R. § 210.32 and Ground Rule 4.5, Complainant Neodron Ltd. ("Neodron") applies to the Administrative Law Judge ("ALJ") for issuance of a subpoena *duces tecum* and *ad testificandum* to:

> **Goodix Technology, Inc.**
> **6370 Lusk Blvd., Ste F204**
> **San Diego, CA  92121**
>
> **Registered Agent:**
> **Fan Zhang**
> **6370 Lusk Blvd., Ste F204**
> **San Diego, CA 92121**

The requested subpoena requires Goodix Technology, Inc. ("Goodix") to produce the documents, materials, and things described in Attachment A to the subpoena, consistent with the Protective Order (Attachment B), at the time and place indicated on the subpoena. The subpoena further requires Goodix to identify and designate the most knowledgeable individual(s) to appear and give testimony as it relates to the topics described in Attachment A, at the specified location and date or at such other location and date on which Complainant and Goodix mutually agree.

Goodix is a supplier of relevant components of Respondents' accused infringing devices in this Investigation, such as touch controllers. Thus, Goodix's documents and information related

1

to these components, specifically their structure, function, design, operation, development, and manufacture, as well as Goodix's relationship with Respondents, are relevant to the subject matter of this Investigation. Goodix's website confirms that the company designs, develops, manufactures, and sells touch controllers, and is in possession, custody, or control of technical information for touch controllers incorporated into accused infringing devices. *See, e.g.,* https://www.goodix.com/en/product/touch_screen_chip.

Respondent HP identified Goodix to Complainant in discovery as a supplier of touch control components in its accused infringing devices. While Complainant has attempted and will continue to attempt to obtain discovery on the touch components Goodix supplies, HP has already objected to providing such third-party information.

The scope of the documents and testimony requested in Attachment A is both reasonable and narrowly tailored to relevant issues in this Investigation and, therefore, will not require an extensive production of documents or require extensive time to comply. Complainant has narrowly tailored the proposed subpoena to minimize the burden on Goodix by only seeking information and documents related to touch controllers that have been made or sold by Goodix and incorporated into Respondents' accused infringing devices. The information sought is highly relevant to the issues to be addressed in this Investigation, including, e.g., infringement of the accused infringing devices by way of Goodix's components. Complainant believes that it will be unable to obtain the requested information by alternate means because Respondents object to providing any such information they have and Goodix is in possession of this information. Complainant will serve the subpoena, including a copy of the Protective Order, and this application by overnight delivery, if not sooner.

For the reasons set forth above, Complainant respectfully requests that the Administrative

Law Judge grant this application for issuance of a subpoena *duces tecum* and *ad testificandum* and

issue the attached subpoena.

Date: July 18, 2019                                     Respectfully submitted,

                                                        */s/ Matthew D. Aichele*
                                                        Tom M. Schaumberg
                                                        Asha Allam
                                                        David H. Hollander
                                                        Evan H. Langdon
                                                        Paulina M. Starostka
                                                        ADDUCI, MASTRIANI & SCHAUMBERG, LLP
                                                        1133 Connecticut Avenue, NW, 12th Floor
                                                        Washington, DC 20036
                                                        Telephone:  (202) 467-6300
                                                        Facsimile:  (202) 466-2006
                                                        E-Mail:  NEO-001@adduci.com

                                                        Reza Mirzaie
                                                        Marc A. Fenster
                                                        Brian D. Ledahl
                                                        Neil A. Rubin
                                                        Kent N. Shum
                                                        Philip X. Wang
                                                        Kristopher R. Davis
                                                        Shani Williams
                                                        Amy E. Hayden
                                                        Christian W. Conkle
                                                        RUSS AUGUST & KABAT
                                                        12424 Wilshire Boulevard, 12th Floor
                                                        Los Angeles, CA 90025
                                                        Phone: (310) 826-7474
                                                        E-Mail:  rak_neodron_itc@raklaw.com

                                                        Matthew D. Aichele
                                                        RUSS AUGUST & KABAT
                                                        915 E Street NW, Suite 405
                                                        Washington, DC 20004
                                                        Phone: (310) 826-7474
                                                        E-Mail:  rak_neodron_itc@raklaw.com

                                                        *Counsel for Complainant Neodron Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that a copy of the **SUBPOENA *DUCES TECUM* TO GOODIX TECHNOLOGY, INC.** was served on the following, in the manner indicated below, this 19th day of July 2019:

Goodix Technology, Inc.            ☒  **VIA FEDERAL EXPRESS MAIL**
6370 Lusk Boulevard, Suite F204
San Diego, CA  92121

Registered Agent:
Fan Zhang
6370 Lusk Boulevard, Suite F204
San Diego, CA 92121

**<u>RESPONDENT AMAZON.COM, INC.</u>:**

Stefani E. Shanberg            ☒  **VIA ELECTRONIC MAIL**
Nathan B. Sabri                 AmazonNeodronITC@mofo.com
Robin L. Brewer
Rachel S. Dolphin
Mathieu A. Swiderski
John S. Douglass
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105

G. Brian Busey
Veronica S. Ascarrunz
David Nathaniel Tan
**MORRISON & FOERSTER LLP**
2000 Pennsylvania Avenue, NW, Suite 6000
Washington, DC 20006

**<u>RESPONDENT DELL TECHNOLOGIES INC.</u>:**

Adam D. Swain              ☒  **VIA ELECTRONIC MAIL**
Brian D. Hill                   Dell-Neodron-ITC@alston.com
**ALSTON & BIRD LLP**
950 F Street, NW
Washington, DC 20004

Michael J. Newton
**ALSTON & BIRD LLP**
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303

Brady Cox
Michael Lee
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201

**RESPONDENTS HP INC. AND MICROSOFT CORPORATION:**

Sean C. Cunningham                          ☒  **VIA ELECTRONIC MAIL**
Erin P. Gibson                                  DLA1162@us.dlapiper.com
Robert Williams
David R. Knudson
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101

Brian Erickson
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701

James Heintz
**DLA PIPER LLP (US)**
One Fountain Square
11911 Freedom Drive, Suite 300
Reston, VA 20190

Erik Fuehrer
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303

Stephanie Lim
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606

**RESPONDENTS LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., AND MOTOROLA MOBILITY LLC:**

Lionel M. Lavenue                          ☒  **VIA ELECTRONIC MAIL**
Cecilia Sanabria                               Lenovo-Motorola-1162-ITC@finnegan.com
Smith R. Brittingham IV
Marcus A.R. Childress
Jorge F. Gonzalez
Amanda E. Stephenson

**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP**
901 New York Avenue, NW
Washington, DC 20001

**RESPONDENT SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD.:**

Ryan K. Yagura                          ☒ **VIA ELECTRONIC MAIL**
Nicholas J. Whilt                          NeodronSamsungOMM@omm.com
Brian Cook
Ben Haber
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, CA 90071

John Kappos
Bo Moon
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660

D. Sean Trainor
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006

Darin Snyder
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111

*/s/ Irina Komarov, Paralegal*
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.

# EXHIBIT E

HOME    CAR CARE    TELEPHONY    COMPUTER    AIR CONDITIONER    AUDIO VIDEO    CARE APPLIANCES

# Lenovo Service Repair Centers

Computer Service >> Lenovo Service Centers >> Lenovo Service Centers Texas

## Lenovo Service Centers in Austin


Ask Tech Support Now

justanswer.com

Get Tech Support in Minutes

Tech Support Will Answer You Now! Questions Answered Every 9 Seconds.

OPEN

Full list of all **Lenovo** Service Repair Centers in **Austin**, **Texas**. All companies with the best technicians in the repair and servicing of Lenovo products.

Below are listed addresses, telephone number, fax and opening days of the **Lenovo** Service Repair Centers in **Austin**, **Texas**.

## Lenovo technical support center in Austin, Texas

| Service Center | Address | Distance |
|---|---|---|
| Great South Texas Corp | 814 ARION PKWY SAN ANTONIO, TX, 78216-2835 Tel: 2103690300 | Distanza: 64 Miles |
| BJ Associates Of San Antonio LLC (The Laptop Specialist) | 10823 GULFDALE ST SAN ANTONIO, TX, 78216-3608 Tel: 2103444563 | Distanza: 65 Miles |
| Intech Southwest Services, LLC. (Intech Southwest) | 4778 Research drive San Antonio, TX, 78240 Tel: 210-690-0000 | Distanza: 69 Miles |
| Micro Technologies (Computer Express) 10130 HUEBNER RD | SAN ANTONIO, TX, 78240-1372 Tel: 2104904700 | Distanza: 69 Miles |
| BJ Associates Of San Antonio LLC (The Laptop Specialist) | 10823 GULFDALE ST SAN ANTONIO, TX, 78216-3608 Tel: 2103444563 | Audio Video |
| Intech Southwest Services, LLC. (Intech Southwest) | 4778 Research drive San Antonio, TX, 78240 Tel: 210-690-0000 | A |
| Micro Technologies (Computer Express) 10130 HUEBNER RD | SAN ANTONIO, TX, 78240-1372 Tel: 2104904700 | A |
| Techville, Inc. (MicroAge Computer Store) | 11343 N CENTRAL EXPY DALLAS, TX, 75243-6703 Tel: 2147397033 | A |
| Technology Assets LLC (Global Asset) | 1815 Monetary Ln. Suite 100 Carrollton, TX, 75006 Tel: 972-695-8600 | A |
| Dean Thedford Office Supply | 123 W COLLIN ST CORSICANA, TX, 75110-5222 Tel: 9038746594 | Audio Video |
| Virtual Communication Specialists (Virtual Communication) | 1550 ROCKY RIDGE RD ATHENS, TX, 75751-5427 Tel: 9036810499 | Audio Video |
| Quality High-Tech Services, Inc. | 11807 Forestgate Dr. Dallas, TX, 75243 Tel: 9722316696 | Audio Video |
| Techville, Inc. (MicroAge Computer Store) | 11343 N CENTRAL EXPY DALLAS, TX, 75243-6703 Tel: 2147397033 | Audio Video |

**None of these companies are owned by Lenovo or Motorola**

## Alphabetical Order

A - B - C - D - E -

F - G - H - I - J -

K - L - M - N - O -

P - Q - R - S - T -

U - V - W - X -

Y - Z


Ask Tech Support Online 24/7

Connect 1-on-1 with a Tech Support Specialist and Get Your Answer in Minutes, 24/7.

Ad  JustAnswer            Visit Site

## Categories

ALL CENTERS

PRINTER SERVICES

AIR CONDITIONERS

**Support for Lenovo products**

**Lenovo Care Premium Support**
Phone: 1-877-737-1082
Hours: any day of the week, between 8AM to 11PM Eastern (New York) time

fb Like 1   Share      Tweet



---

**Zip Code: 73301**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |  |
|---|---|---|
| **NEODRON LTD.,** | ) | |
| | ) | |
| | ) | Case No. 6:19-CV-398 |
| *Plaintiff,* | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| **LENOVO GROUP LTD., LENOVO** | ) | |
| **(UNITED STATES) INC., and** | ) | |
| **MOTOROLA MOBILITY LLC,** | ) | |
| | ) | |
| *Defendants.* | ) | |

**DECLARATION OF MICHAEL MERRIT IN SUPPORT OF MOTION TO DISMISS**
**FOR IMPROPER VENUE**

I, Michael Merritt, being over 21 years of age, of sound mind, and capable of making this

Declaration, declare and testify as follows:

1.   I am the Global Manager of Real Estate Operations with Motorola Mobility LLC
(hereinafter, "Motorola").  As part of my responsibilities, I am knowledgeable of Motorola
office locations and employment records.

2.   Motorola is a Delaware corporation with its headquarters and principal place of business
at 222 West Merchandise Mart Plaza, Suite 1800, Chicago, Illinois 60654.  Motorola is a
direct, wholly owned subsidiary of Motorola Mobility Holdings LLC, which is an indirect,
wholly owned subsidiary of Lenovo Group Limited.  Motorola maintains most of its
business records, including technical documents and source code, at either its headquarters
in Chicago, Illinois, or in conjunction with Lenovo (United States) Inc. in Morrisville,
North Carolina.

3.   Motorola maintains no document servers in Texas.

4.   I am aware of the website https://www.service-center-locator.com/lenovo/texas/lenovo-
austin-texas.htm, which as of August 8, 2019, lists third-party companies as follows:

1

**Lenovo technical support center in Austin, Texas**

| Service Center | Address | Distance |
|---|---|---|
| Great South Texas Corp | 814 ARION PKWY<br>SAN ANTONIO, TX, 78216-2835<br>Tel: 2103690300 | Distanza: 64 Miles |
| BJ Associates Of San Antonio LLC (The Laptop Specialist) | 10823 GULFDALE ST<br>SAN ANTONIO, TX, 78216-3608<br>Tel: 2103444563 | Distanza: 65 Miles |
| Intech Southwest Services, LLC. (Intech Southwest) | 4778 Research drive<br>San Antonio, TX, 78240<br>Tel: 210-696-0000 | Distanza: 69 Miles |
| Micro Technologies (Computer Express)<br>10130 HUEBNER RD | SAN ANTONIO, TX, 78240-1372<br>Tel: 2104904700 | Distanza: 69 Miles |
| BJ Associates Of San Antonio LLC (The Laptop Specialist) | 10823 GULFDALE ST<br>SAN ANTONIO, TX, 78216-3608<br>Tel: 2103444563 | Audio Video |
| Intech Southwest Services, LLC. (Intech Southwest) | 4778 Research drive<br>San Antonio, TX, 78240<br>Tel: 210-696-0000 | Audio Video |
| Micro Technologies (Computer Express)<br>10130 HUEBNER RD | SAN ANTONIO, TX, 78240-1372<br>Tel: 2104904700 | Audio Video |
| Techville, Inc. (MicroAge Computer Store) | 11343 N CENTRAL EXPY<br>DALLAS, TX, 75243-6703<br>Tel: 2147397033 | Audio Video |
| Technology Assets LLC (Global Asset) | 1815 Monetary Ln. Suite 100<br>Carrollton, TX, 75006<br>Tel: 972-695-8600 | Audio Video |
| Dean Thedford Office Supply | 123 W COLLIN ST<br>CORSICANA, TX, 75110-5222<br>Tel: 9038746594 | Audio Video |
| Virtual Communication Specialists (Virtual Communication) | 1550 ROCKY RIDGE RD<br>ATHENS, TX, 75751-5427<br>Tel: 9036810499 | Audio Video |
| Quality High-Tech Services, Inc. | 11807 Forestgate Dr.<br>Dallas, TX, 75243<br>Tel: 9722316896 | Audio Video |
| Techville, Inc. (MicroAge Computer Store) | 11343 N CENTRAL EXPY<br>DALLAS, TX, 75243-6703<br>Tel: 2147397033 | Audio Video |

Motorola does not own or operate the above-listed third-party locations.

5.     As of the date of filing of the original Complaint (June 28, 2019), Motorola maintained

offices and/or employees at the following locations in California and Texas:

In California

- 3325 Scott Blvd., Santa Clara, California 95054

In Texas

- 13301 Park Vista Blvd., Fort Worth, Texas 76177

6.     Motorola employs approximately 677 total employees in the United States, distributed across offices as well as work at home positions.

7.     Motorola has a single office within the state of Texas, located in Fort Worth.  At the Fort Worth, Texas, office, Motorola currently employs 11 employees. All of Motorola's Texas employees are in the Fort Worth area.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on   8/20/19       .

Name: Michael Merritt
Title:   Global Manager Real Estate Operations

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |  |
|---|---|---|
| NEODRON LTD., | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 6:19-CV-398 |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| LENOVO GROUP LTD., LENOVO | ) | |
| (UNITED STATES) INC., and | ) | |
| MOTOROLA MOBILITY LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

**DECLARATION OF IVORY JOHNSON IN SUPPORT OF MOTION TO DISMISS FOR
IMPROPER VENUE**

I, Ivory Johnson, being over 21 years of age, of sound mind, and capable of making this

Declaration, declare and testify as follows:

1.    I am the Real Estate Global Operations Senior Manager with Lenovo (United States) Inc.

(hereinafter, "Lenovo"). As part of my responsibilities, I maintain the database for Lenovo

office sites, and therefore, am knowledgeable about the current and former Lenovo office

locations.

2.    Lenovo is a Delaware corporation with its headquarters and principal place of business at

8001 Development Drive, Morrisville, North Carolina, 27560.

3.    Lenovo maintains no document servers in Texas.

4.    Any Lenovo products manufactured in the United States are not manufactured in Texas.

Instead, they are manufactured at a Lenovo facility in Whitsett, North Carolina.

5.    As of the date of filing of the original Complaint (June 28, 2019), Lenovo maintained

offices at the following locations in California:

- 44 Montgomery Street, San Francisco, California 94104

- 3325 Scott Blvd., Santa Clara, California 95054

6.    Lenovo has no offices or other business locations in Texas.

1

7. I am aware of the website https://www.service-center-locator.com/lenovo/texas/lenovo-austin-texas.htm, which as of August 8, 2019, lists third-party companies as follows:

Lenovo technical support center in Austin, Texas

| Service Center | Address | Distance |
|---|---|---|
| Great South Texas Corp | 814 ARION PKWY<br>SAN ANTONIO, TX, 78216-3826<br>Tel: 2103690300 | Distanza: 64 Miles |
| BJ Associates Of San Antonio LLC (The Laptop Specialist) | 18823 GULFDALE ST<br>SAN ANTONIO, TX, 78216-3608<br>Tel: 2103446663 | Distanza: 65 Miles |
| Intech Southwest Services, LLC. (Intech Southwest) | 4778 Research drive<br>San Antonio, TX, 78240<br>Tel: 210-690-6000 | Distanza: 68 Miles |
| Micro Technologies (Computer Express)<br>18130 HUEBNER RD | SAN ANTONIO, TX, 78248-1372<br>Tel: 2104984700 | Distanza: 69 Miles |
| BJ Associates Of San Antonio LLC (The Laptop Specialist) | 18823 GULFDALE ST<br>SAN ANTONIO, TX, 78216-3608<br>Tel: 2103446663 | Audio Video |
| Intech Southwest Services, LLC (Intech Southwest) | 4778 Research drive<br>San Antonio, TX, 78240<br>Tel: 210-690-6000 | Audio Video |
| Micro Technologies (Computer Express)<br>18130 HUEBNER RD | SAN ANTONIO, TX, 78248-1372<br>Tel: 2104984700 | Audio Video |
| Techvilla, Inc. (MicroAge Computer Store) | 11343 N CENTRAL EXPY<br>DALLAS, TX, 75243-6703<br>Tel: 2147397633 | Audio Video |
| Technology Assets LLC (Global Asset) | 1815 Monetary LN. Suite 100<br>Carrollton, TX, 75006<br>Tel: 972-695-3600 | Audio Video |
| Dean Thedford Office Supply | 123 W COLLIN ST<br>CORSICANA, TX, 75110-5222<br>Tel: 9038746594 | Audio Video |
| Virtual Communication Specialists (Virtual Communication) | 1694 ROCKY RIDGE RD<br>ATHENS, TX, 75751-5427<br>Tel: 9036810499 | Audio Video |
| Quality High-Tech Services, Inc | 11807 Forestgate Dr<br>Dallas, TX, 75243<br>Tel: 9722318698 | Audio Video |
| Techvilla  Inc  (MicroAge Computer Store) | 11343 N CENTRAL EXPY<br>DALLAS  TX  75243-6703<br>Tel: 2147397633 | Audio Video |

Lenovo does not own or operate the above-listed third-party locations.

8. On the website https://lenovocareers.com/, Lenovo posts job listings for each open position available in the United States. Currently, open positions are available throughout the United States, either at Lenovo offices or business locations or work at home positions. As

2

of August 8, 2019, there are 204 open positions available throughout the United States at Lenovo offices or business locations or work at home positions.

9.      As for available positions in the state of Texas, the https://lenovocareers.com/ website lists the following open positions in Texas:



As shown in the image above, of the six open positions in Texas, three are in the Dallas/Ft. Worth area.

10.     As for the open position of "OEM Data Center Acquisition Sales Account Executive," the position's location is meant to be flexible, and can be in Houston, Dallas, or Austin.  It is meant to be a work at home position.

Lenovo

# OEM Data Center Acquisition Sales Account Executive · Texas

Austin, Texas, United States   7/7/2019

Apply Now

**Position Description:**

As an OEM Data Center Acquisition Account Executive for Lenovo, you'll be responsible for delivering net new account wins. Within each account you will have responsibility for selling solutions from our Data Center portfolio, focusing specifically on OEM opportunities for server, storage, networking, and IoT Edge. From these sales you will drive revenue and profit to position our company for continued growth and success. You will champion the innovative power of our products to make our customers more productive, collaborative and transformative. You will understand Lenovo's portfolio of award-winning products and develop strategies to help new and existing customers find and implement the best solutions. This is a client facing, acquisition sales role requiring deep industry experience, the ability to identify, cultivate, and close net new business, and expertise working large deals at the C level. We are looking for a hunter with a successful and proven track record to take their career, the territory and our clients to the next level.

- Build partnerships with existing, current and new OEM customers by coordinating the efforts of sales, opportunity management, marketing and pre and post sales technical support to maximize revenue and margin for Lenovo OEM products.
- Build & execute operational plans for OEM products and options.
- Own ongoing analysis of metrics & business performance to produce weekly report for OEM business performance & relevant actions and recommendations.
- Engages marketing team to ensure coverage of OEM products.
- Assist & mitigate risks/issues through effective contingency plans.
- Experience in cold-calling important in order to identify and pursue new acquisition opportunities.
- Plan and execute acquisition activities in the OEM arena in agreement with sales / account teams.
- Maintains competitor analysis to identify business opportunities, provide insightful & actionable outputs across products, markets & competitors - includes product positioning & SWOT analysis.
- Delivers Subject Matter Expert support to sales & marketing team, on both technology & products.

Location flexible, can be in Houston, Dallas, or Austin

... want extended teams.

**Required skills:**
- Minimum 7+ years business development, or sales / marketing experience in the IT industry (software and hardware)
- 2+ years selling OEM solutions
- 2+ years working with channel partners

**Preferred skills:**
- Understanding of the Lenovo portfolio of products and their practical application/ contribution to customers' requirements
- Business analytical skills
- Project management skills
- Negotiation and communication skills

11. As for the open position of "Regional Sales Lead - Device as a Service," the position is estimated to require travel 50% of the time. It is meant to be a work at home position.

4

**Lenovo**

## Regional Sales Pursuit Lead - Device as a Service

🗓 73388   👤 Sales   📅 6/27/2019

📍 Austin, Texas, United States

### Position Description:

**Position Description**

Lenovo is the fastest growing technology company on the planet, with growth outpacing our competition quarter after quarter. Lenovo's fundamental belief is that life rewards those who Never Stand Still. Every day, every employee at Lenovo is focused on moving forward, rejecting traditional limits, and always seeking a better way. We are looking for the person who challenges the ordinary and seeks to innovate in learning, while also balancing execution.

The Device as a Service Pursuit Lead will be responsible for selling an expanding portfolio of services along with award winning Lenovo's PC/rio customers lisa Device as a Service model in the Western U.S. You will need to have in depth knowledge of PC services that include but are not limited to Deployment Services, HelpDesk Support, Service Contract Upgrades, Protection Services, Migration Services and Maintenance along with professional services that are required to Design, Deploy, and Support of client products.

You will be expected to attain sales targets through driving new business and evangelizing Lenovo's Device as a Service offering. You will need to demonstrate the ability to take initiative and provide leadership in a growing business. You will need to have a successful track record of selling services and complex solutions that enable or enhance aPC hardware sale. You will champion the innovative power of our products to make companies more productive, collaborative and transformative. You will need to understand Lenovo's portfolio of award-winning products and develop strategies to help new and existing enterprise customers find and implement the best solutions.

In this role, the DaaS Pursuit Lead will be expected to drive their own sales calls, while also attending joint calls with sales team members at all levels of the customer organization. This is a client facing sales role requiring deep industry experience, the ability to identify, cultivate, and close net new business, and expertise working large deals at the C level.

**Key Responsibilities:**

- Identify, develop, and close new large enterprise opportunities within the territory across multiple verticals
- Achieve sales objectives for Lenovo while driving growth across multiple product sets
- Develop, implement, and execute an effective sales strategy to achieve sales goals
- Develop Clevel relationships and serve as a trusted consultant to customers
- Understand and adapt to Lenovo's ongoing product and services developments and how to incorporate them into an 'as a Service' model
- Lead a cross-functional team within the company to keep deals moving through the funnel
- Ensure that our customers receive world-class sales and customer service
- Effectively and consistently use Salesforce.com and other reporting tools to track key sales metrics and consistently meet those metrics

### Position Requirements:

**Position Requirements:**

We're looking to add talented individuals who are self-motivated and desire boundless opportunities, to join us. Come share in the discoveries that are forged from our shared achievements at Lenovo as we drive the next generation in technology

**Minimum Requirements:**

- BA/BS degree or equivalent professional work experience
- 7+ years of successful Enterprise technology sales is required
- Demonstrated track record of top performance with multi-million dollar quota
- In depth knowledge of "as a Service" models and their value proposition
- Direct experience in IT Services Industry focused on PCIs
- Proven success in building solutions in the IT services industry
- Strategic mindset and sound business acumen are required, along with effective decision making, contract negotiation and partner management skills
- Excellent communication, both oral and written, and polished presentation skills
- Strong prioritization skills, attention to detail, commitment to deadlines
- Proven ability to operate with a high level of professionalism, entrepreneurialism and agility
- Demonstrated ability to work across all levels of the organization with a teaming attitude
- Proficiency in Microsoft Word, PowerPoint, Excel
- Travel estimated at 50%

- Experience with MS Dynamics, Salesforce & ServiceNow
- Consumption based sales experience in SaaS, DaaS, or Cloud Services
- MBA or Advanced technical degree



We are an equal opportunity employer and do not discriminate against any employee or applicant for employment because of race, color, sex, age, national origin, religion, sexual orientation, gender identity, status as a veteran, and basis of disability or any other federal, state or local protected class.

Lenovo is a $45 billion global Fortune 250 company and leader in providing innovative consumer, commercial and enterprise technology. Our portfolio of high-quality, secure products and services covers PCs, workstations, servers, storage, smart TVs and a family of mobile products like smartphones, tablets and apps. Everyone here at Lenovo is an integral part of the company, working together, across continents, cultures and innovations, all comprised in a friendly, fast-paced, work environment that focuses on one common goal: to be known as the best in what we do.

12. As for the open position of "OEM Acquisition Account Manager - South Central," the position is meant to be a work at home position.

Lenovo

OEM Acquisition Account Manager - South Central

72202 Sales 4/26/2019

Austin, Texas, United States

Position Description:

As an OEM Account Executive for Lenovo, you'll be responsible for delivering net new account wins. Within each account you will have responsibility for selling solutions focusing specifically on OEM opportunities for workstation and client devices. From these sales you will drive revenue and profit to position our company for continued growth and success. You will champion the innovative power of our products to make our customers more productive, collaborative and transformative. You will understand Lenovo's portfolio of award-winning products and develop strategies to help new and existing customers find and implement the best solutions. This is a client facing sales role requiring industry experience, the ability to identify, cultivate, and close net new business, and expertise working large deals at the C level. We are looking for a salesperson with a successful and proven track record to take their career, the territory and our clients to the next level.

• Build partnerships with existing, current and new OEM customers by coordinating the efforts of sales, opportunity management, marketing and pre and post sales technical support to maximize Revenue and Margin for Lenovo OEM products.
• Builds & executes operational plans for OEM products and options.
• Owns ongoing analysis of metrics & business performance to produce weekly report for OEM business performance & relevant actions and recommendations.
• Engages marketing team to ensure coverage of OEM products.
• Assess & mitigate risks / issues through effective contingency plans.
• Experience in cold-calling important in order to identify and pursue new acquisition opportunities plan and execute acquisition activities in the OEM area in agreement with sales / account teams.
• Maintains competitor analysis to identify business opportunities, provide insightful & actionable outputs across products, markets & competitors - includes product positioning & SWOT analysis.
• Delivers Subject Matter Expert support to sales & marketing teams, on both technology & products. Provides monthly / quarterly road map updates to relevant extended teams.

LI-75001-US,LI-77001-US

Position Requirements:
• Minimum 5+ years business development or sales / marketing experience in the IT Industry (software and hardware)
• Proficient in being able to sell the value of OEM solutions
Understand Lenovo's portfolio of products and their practical application / contribution to customers requirements.

Preferred:
• Business analytical skills
• Project management skills
• Negotiation and communication skills
• Experience in working with channel partners

13.   Lenovo employs approximately 4,347 total employees in the United States, distributed across its domestic offices as well as work at home positions.  As Lenovo maintains no office in Texas, any employee within Texas is a work at home employee.

14.   As of August 20, 2019, Lenovo employs only one employee in the Western District of Texas, and she works from home.  She is based in Austin, Texas, and her role is primarily in sales, and she reports to a manager based in California.  This employee's employment is not conditioned upon maintaining residence in Austin or storing Lenovo materials in her home.  Lenovo does not own or lease the one work-from-home employee's home.  The work-from-home employee maintains a mobile contact phone number, and the number has a North Carolina area code (336).  Lenovo does not list the one work-from-home employee's home address or home telephone number on a public website, or in a telephone or other public directory.

15.   As Lenovo maintains offices in San Francisco and Santa Clara, there is a possibility that documents or witnesses with information related to the Lenovo Yoga 730 may be located there.

16.   Thus, to confirm, Lenovo currently has no regular and/or established office or place of business within the State of Texas.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on   0/22/19

Name:  Ivory Johnson
Title:  Global Operations Senior Manager

7